JOHN LEE, Respondent, v. THE J. B. SICKLES SADDLERY COMPANY, Appellant.

St. Louis Court of Appeals, December 3, 1889.

1. **Sales**: IMPLIED WARRANTY. When a contract for the sale and future delivery of an article is made, and the article is purchased for a specific purpose known to the vendor, there is, in the absence of express limitation to the contrary, an implied warranty that its condition will be such as to make it reasonably fit for that purpose.

2. ———: DAMAGES. In case of the wrongful refusal of one instalment of the property purchased, when the contract calls for successive deliveries, the vendor cannot recover damages as for a refusal of all the property contracted for, unless the vendee repudiated the entire contract, or intended to reject all further instalments.

3. Practice, Trial: LAW AND FACT. Whether the vendee intended to discontinue the performance of the contract altogether, is, if there be evidence thereof, a question of fact for the jury.

*Appeal from the St. Louis City Circuit Court.*—HON. JACOB KLEIN, Judge.

REVERSED AND REMANDED.

*David Goldsmith*, for the appellant.

*D. D. Fassett* and *Sim T. Price*, for the respondent.

BIGGS, J., delivered the opinion of the court.

The defendant is a business corporation, organized under the laws of the state of Missouri, and is engaged in the manufacture of "horse collars" in the city of St. Louis. The plaintiff is a farmer and resides in the county of St. Louis. On the fifteenth day of October, 1885, the parties to this suit entered into the following contract, to-wit: "This agreement made and entered into this fifteenth day of October, A. D. 1885, between J. B. Sickles Saddlery Company, of the city of St. Louis, Missouri, party of the first part, and John Lee as principal and Wm. Lee as surety, party of the second part, witnesseth: That, whereas the party of the first part has purchased from the party of the second part forty (40) tons of rye straw, cleanly threshed, of good length, and not too coarse, at one dollar ($1.00) per hundred pounds, the party of the second part hereby agrees to deliver the above quantity at their place of business as needed, between July 1, 1886, and April 1, 1887, unto the party of the first part.

The party of the second part also agrees that the above straw shall be well and tightly bound, and stored under a shed."

On the first day of May, 1887, the plaintiff brought this suit alleging delivery and acceptance of a small portion of straw of the kind and quality mentioned in the contract, and an offer to deliver the balance, according to the requirements of the contract; that the defendant wrongfully refused to receive any more of the straw, and the plaintiff was compelled to and did sell the remainder to other parties, for the best price obtainable, to avoid a greater loss; that he sold the straw for fifty cents per hundred pounds, which was the highest price he could obtain, by which the plaintiff was damaged in the sum of three hundred and eighty dollars.

The answer of the defendant was a general denial.

It appeared from the testimony that the straw in controversy was purchased for use, in the manufacture of " horse collars," and that this was well known to the plaintiff at the time the contract was made. The contract provided that the straw should be delivered between certain dates, and at such times, and in such quantities as the necessities of the defendant's business might require.

The plaintiff delivered three loads of straw, which were received ; the first load was paid for at the contract price; the second and third were paid for at the rate of seventy-five cents per hundred pounds. This reduction was made, as the defendant claimed, because the straw was not of the kind and quality contracted for, and that it contained a large quantity of weeds. On the other hand, the plaintiff alleged that the straw was up to the required standard, that it contained no more weeds than were usually found in that kind of straw; that no objection was made to the quality of the straw until it was unloaded, and that he submitted to the defendant's demands rather than have a lawsuit.

When the third load was delivered and paid for, the defendant's foreman informed the plaintiff that no more straw of *that kind* and *quality* would be received under the contract, but the defendant was ready to receive and pay for the balance provided the kind, it had contracted for, was tendered. Afterwards, on the second day (Tuesday) of November, 1886, the defendant wrote a letter to the plaintiff, requesting him to deliver a load of straw every Wednesday, the weather permitting.. This letter was received by plaintiff on Wednesday, but at such a late hour, that he was unable to comply with the request on that day, but on the following day he hauled in a load, which he says the defendant rejected for the sole reason, that it was not delivered on the day before; this the defendant denied, and alleged that the straw was not received for the additional reason, that it was not of the particular quality mentioned in the contract, and that it had so many weeds in it, that it was not reasonably fit for use in the manufacture of collars. The plaintiff also tendered a fifth load which defendant claimed was rejected for like reasons; thereupon the plaintiff notified the defendant that he would deliver no more straw under the contract, and would sell the remainder on the market for the best price obtainable.

The plaintiff's evidence tended to prove that the remainder of the straw, which he had on hand and ready for delivery, was of the kind and quality contracted for, and was as good as that previously delivered and tendered ; that, after the execution of the contract, the market price of rye straw declined to fifty cents per hundred pounds, and that this was all he could get for the balance of the straw. The defendant's evidence tended to prove that the straw tendered was not of the particular fineness and quality mentioned in the contract, and that it contained an unusual quantity of weeds, by reason of which it was rendered unsuitable for the purposes for which it was purchased.

There was a judgment in favor of the plaintiff, for three hundred and seventy dollars, and, the court having refused to set aside the judgment, and award the defendant a new trial, the defendant has brought the case to this court for review. The defendant challenges the validity of the judgment on three grounds: _First_. That the trial court, in the instructions, ignored the right of the defendant to reject the straw, on account of the weeds in it. _Second_. That the court improperly instructed the jury as to the measure of damages. _Third_. That the verdict was greater than warranted by any evidence in the cause.

I. The argument of defendant's counsel, on the first proposition, if we understand him correctly, amounts to this: That, under the written contract, read in evidence, the defendant had a right to demand, that the straw should not only be of the particular quality and fineness, expressly stipulated in the contract, but that its general condition, in other respects, should be such as to render it _reasonably fit_ for the purpose for which it was purchased. In this, we think, the defendant was clearly right. The law governing executory contracts is quite different from that applicable to executed sales. In the latter class of cases, the maxim of _caveat emptor_ applies in its fullest extent, with but very few exceptions or limitations. In all executory contracts for the sale of any commodity, when no opportunity for inspection is offered, there is always an implied warranty that the article sold will be of merchantable quality and condition; and if the article is purchased for a particular purpose, and this was known to the vendor, at the time of making the contract, then the law will annex to every such contract of sale, the implied condition that the article shall be reasonably fit for the purpose for which it was bought, unless _this_ is controlled by express stipulation. This implied condition, imposed by the law, would not require the article

sold to be of any particular degree of fineness or quality; if the purchaser desired to protect himself in this particular, he must make it the subject of special contract; but the law does contemplate, that, in addition to the special qualities, contracted for, the article shall, as to its general condition, be merchantable; and in such cases, when there is an express contract, as in the case at bar, the law does not attempt to introduce new terms, or, in any way, vary the contract as made, but merely implies that certain acts of the vendor, when not controlled by express stipulation, give rise to certain obligations, and then the law proceeds as if the parties had expressly contracted to perform them.' *Hart v. Wright*, 17 Wend. 267; *Sceva v. True*, 53 N. H. 627; *Jones v. Bright*, 5 Bing. Rep. 533; *Walker v. Brown*, 28 Ill. 378. In the case under consideration, the evidence tended to show that the plaintiff was advised of the fact that the defendant intended to use the straw in the manufacture of horse collars, · and the defendant's evidence also tended to prove that about one-third of the article tendered, by the plaintiff, as rye straw, was weeds; and that, for this reason, the straw was unfit for use in the manufacture of. collars, except at a great loss. If this was true, then the defendant had the right to reject the straw.    Lord ELLENBOROUGH, in *Gardiner v. Gray* (4 Comp. 144), lays down the rule that, "where there is no opportunity to inspect the commodity, the maxim of *caveat emptor* does not apply.    He (the vendee) cannot, without a warranty, insist that it shall be of any particular quality of fineness, but the intention of both parties must be taken to be, that it shall be *salable* in the market, under the denomination, mentioned in the contract between them.    The purchaser cannot be supposed to buy goods to lay them on a dung-hill."    If the straw, that was tendered by the plaintiff, had become rotten or decayed, to such an extent as to render it useless, or not reasonably fit for manufacturing purposes, would the defendant have been compelled to

receive it? Clearly not. Then if the straw was rendered unfit for such purpose, on account of unusual quantities of weeds, upon what principle can it be claimed that the defendant did not have the right to reject it? The first instruction, given by the court, on its own motion, and the refusal of the instruction asked by the defendant, shows that the court did not submit this view of the case to the jury. The instruction given by the court reads as follows: "If the jury believe, from the evidence, that the last load of straw, tendered by the plaintiff to the defendant, under the contract, read in evidence, was such as is called for by the terms of such contract, viz.: That it was cleanly threshed, of good length, and not too coarse, as such terms are explained in instructions numbers 2 and 3, given to you by the court; and if you also find, from the evidence, that said load was tendered by the plaintiff, to the defendant, at its place of business, in pursuance of the letter of November 2, 1886, from defendant to plaintiff, read in evidence, and that defendant refused to receive the same, or accept said load when so tendered; and that plaintiff stood ready to deliver rye straw of the kind and quality called for in such contract, and to the amount specified in said contract, then the jury should find for the plaintiff." The defendant's instruction, which the court refused, was as follows: "If the jury believe, from the evidence, that the last load of straw, tendered by the plaintiff, and rejected by the defendant, contained a material quantity of weeds, then the defendant was warranted in its refusal to accept the same, and the jury should accordingly find for defendant." The court, in the instruction which it gave, undertook to cover the entire case, and told the jury that the plaintiff was entitled to a verdict, if the straw was "cleanly threshed, of good length and not too coarse," thus ignoring the defendant's evidence as to the weeds in

the straw. This does not present a case of non-direction, merely, but of misdirection. Instructions should be based upon the entire evidence, and present to the jury, for determination, the different aspects of the case, as shown by the evidence in the cause. *Mansur v. Botts*, 80 Mo. 651. If an instruction restricts the issues, it is faulty, and amounts to a misdirection. *Iron Mt. Bank v. Murdock*, 62 Mo. 70. The jury should have been instructed that, if the defendant bought the straw for the purpose of manufacturing collars, and this was known to the plaintiff, and the straw tendered contained an unusual quantity of weeds, so as to render it, on that account, not reasonably fit for the purpose for which it was bought, then the defendant had a right to reject it, even though the jury might find that it was cleanly threshed, of good length, and not too coarse. Our conclusion is that the court committed error in the instruction given, and this error was not cured, either directly, or by fair implication, by the other instructions. This, alone, would require a reversal of the judgment.

II.    The next assignment of error has reference to the court's instruction concerning the measure of damages. The court directed the jury as follows : "If the jury find for the plaintiff, they should find in his favor with reference to all the straw which the defendant agreed, in the contract read in evidence, to take, less the quantity which the defendant actually received from the plaintiff, and they should assess his damages at such sum as they may find, from the evidence, to be the difference between the price which the defendant agreed to pay, under said contract, and the market value, in the city of St. Louis, of such straw as is called for by said contract, as explained in the other instructions of the court, at and during the time when the same was delivered under said contract."

The defendant insists that, when the evidence showed only a small portion tendered, the plaintiff

could only recover damages for a failure to accept all the straw, in the event it further appeared that the defendant had repudiated the contract, or had formed the intention to reject the other instalments; and, further, that there was no evidence that the defendant had repudiated the contract, or had any such intention; and even if there was such testimony, the court ought to have submitted the question to the jury. We are of the opinion that the defendant's counsel states the law correctly, but we differ with him as to the character and effect of the evidence. There was a difference of opinion from the beginning of the delivery, as to the quality of the straw; the plaintiff claimed that the straw was according to contract, and the defendant asserted that it was not. When the third load was delivered, the defendant's foreman informed the plaintiff that it would receive no more straw of the kind and quality already delivered. After this, two other loads were tendered, which were rejected. These facts afforded some evidence that the defendant had determined to repudiate the contract, and to receive no more straw from the plaintiff. As the remainder of the straw was of the same kind and quality, it would have been useless for plaintiff to continue to make the tenders, and the law would not require it. Whether the defendant had repudiated the contract, or had concluded not to receive the remainder of the straw, we think was not clearly submitted by the plaintiff's first instruction, although the instruction seems to have been drawn with that view. On a retrial, the intention of the jury ought to be directed to this question in such a way as not to be overlooked or misunderstood. We will have to rule this assignment likewise in favor of the defendant.

Our conclusion is that the judgment must be reversed and the cause remanded for retrial, which relieves us of the necessity of inquiring into the third

assignment of error. With the concurrence of the other judges, the judgment will be reversed, and the cause remanded.