TEXAS FRUIT COMPANY, Respondent, v. I. R. LANE et al., Appellants.

St. Louis Court of Appeals, April 28, 1903.

1. **Warranty, Implied: SALE BY SAMPLE: EVIDENCE CONCLUSIVE.** The evidence in a suit for breach of warranty as to the grade of 2,000 barrels of apples sold to plaintiff by defendants, held, to show clearly that a sale by sample had been made, carrying an implied warranty that the entire lot should correspond in size and grade with the sample, and not a sale after inspection by the buyer of the lot sold.

2. ———: ———: **VERDICT OF JURY: CONFLICT OF EVIDENCE: CONCLUSIVE.** A verdict of the jury in a case where the evidence is conflicting, is conclusive on appeal.

3. ———: ———: **INSTRUCTIONS GIVEN COVER THE CASE: REFUSED INSTRUCTIONS; NO ERROR, WHEN.** Where the in-

structions given contain a clear, concise and correct expression of the law of the case, and cover every issue tendered by the pleadings that finds any support in the evidence, it is immaterial whether the refused instructions are correct or not.

Appeal from Greene Circuit Court.—*Hon. J. T. Neville,* Judge.

AFFIRMED.

### STATEMENT.

Omitting caption the count of the petition on which the cause was submitted to the jury is as follows:

"Comes now the plaintiff, and for its amended petition states that it is a corporation duly organized under the laws of the State of Texas.

"For cause of action plaintiff states that on the twenty-first day of December, 1901, it bought of the defendants at Springfield, Missouri, 2,000 barrels of No. 1 apples; that at the time of said sale said apples were warranted by the defendants to be No. 1 apples, No. 1 apples being a particular grade or quality of apples well known to the market and to persons buying, selling and dealing in apples in the market in Springfield, Missouri; and plaintiff avers that it paid to the defendants therefor the sum of $7,000; that by the terms of said sale and agreement said defendants were to superintend the shipping of said apples to plaintiff at its place of business in the State of Texas as called for, and that apples were subsequently shipped to plaintiff in the State of Texas in the pretended compliance on the part of said defendants with the terms of their said contract; that said apples so shipped to plaintiff and received by it were not of the kind and quality bought by plaintiff of said defendants, but were greatly inferior in quality and value to those which plaintiff had bought in this; that 746 barrels of the apples so shipped to plaintiff and received by it were not of the grade or

quality of apples known as No. 1 apples, but plaintiff avers that the apples contained in said 746 barrels were very small and knotty and greatly inferior in quality and value to No. 1 apples and worth much less in the market. Plaintiff avers that the apples contained in said 746 barrels were practically worthless and of but little value; that by reason of the premises plaintiff has been damaged in the sum of $1,700. Wherefore plaintiff prays judgment for the sum of $1,700 and for costs."

The answer is as follows:

"Comes now the defendants and for their answer to plaintiff's amended petition in the above entitled cause, and to each and both counts thereof deny each and every allegation therein contained, and having fully answered pray to be discharged without day and with cost.

"For another and further and separate defense defendants say that they deny that they sold plaintiff 2,000 barrels of apples as alleged, but aver and charge the facts to be that prior to the twenty-first day of December, 1901, the defendants gave the plaintiff an option contract to purchase said apples; that before the expiration of said option the plaintiff notified the defendants of its intention to purchase and on the twenty-first day of December, instead of purchasing said apples under said option contract, it directed plaintiff to sell, assign, transfer and deliver, the said apples to the State National Bank of Denison, Texas, upon the payment by said bank of $7,000, the price named in the option contract, to the defendants herein; that the said State Bank of Denison, Texas, paid defendants the said $7,000, and the defendants at the plaintiff's request executed and delivered to said bank a bill of sale for said apples; that at the time of making said bill of sale said apples were stored in the warehouse of the Springfield Ice and Refrigerating Company of Springfield, Missouri, and defendants held therefor a bill of lading or warehouse

receipt duly issued on same and other apples; that the defendants' warehouse receipt was cancelled as to the said 2,000 barrels covered by the bill of sale, and a warehouse receipt issued by said Springfield Ice and Refrigerating Company to the said State Bank of Denison, Texas, and said apples delivered in said warehouse at Springfield, Missouri, to said bank by the issuance of said receipt, and defendants deny that they had anything to do with the shipping of said apples, but aver that said apples were delivered to said bank in said warehouse in Springfield, Missouri.

"Defendants further state that prior to taking said option on said apples the plaintiff, through its agent, fully inspected said apples, and that the apples so delivered to the said State Bank of Denison, Texas, by defendants, as aforesaid, in said warehouse, were No. 1 apples, and none of them No. 2 or orchard runs. Wherefore defendants, having fully answered, pray to be discharged without day and with their cost."

The reply is as follows:

"Comes now the plaintiff, and replying to defendants' answer states that it denies each and every allegation therein contained. Further replying, plaintiff states that, although the bill of sale for said apples executed by defendants was made to the National Bank of Denison, Texas, the same was so made for the purpose only of securing to said bank the purchase price of said apples, which said amount plaintiff borrowed from said bank for said purpose; that this plaintiff was the real party in interest, and that said contract of sale was for its sole benefit and use, and that said bank had no interest in said apples except as security for a temporary loan for the money with which defendants were paid for said apples; that all the foregoing facts were known to defendants at the time of said transaction.'"

The evidence is that the plaintiff is a Texas cor-. poration having its principal office in Denison in that State. The defendants, in the fall of 1901, as co- partners, raised, bought and barreled apples and put them in cold storage in the city of Springfield, Mis- souri, taking a warehouse receipt for 3,101 barrels from the cold storage company. Early in December, 1901, Frank Mazzei, an officer of the plaintiff company, went to Springfield and met W. C. Lane, one of the defend- ants, with a view of buying apples. He and W. C. Lane inspected some of the apples in cold storage by opening the barrels and making an examination of their contents. Mazzei was pleased with the apples and asked Lane if the lot was as good as those inspected. Lane assured him that they were and that they would all grade as No. 1 apples. It was then agreed that plaintiff would take 2,000 barrels of the apples at $3.50 per barrel, but plaintiff was not prepared to pay the money down for the apples and it was agreed between Mazzei and W. C. Lane that defendants would hold the apples for a few days to give Mazzei time to return to Denison and have his company make some arrangement to get the money to pay for the apples. On Mazzei's return to Denison, plaintiff arranged with the State National Bank of Denison for the money to pay for the apples by depositing with it $1,000 in cash and agreeing that the bill of sale and a warehouse receipt for the apples should be made to the bank, and that the apples should be shipped to the bank as the plaintiff might need them, plaintiff to pay all charges and a certain price per bar- rel for each carload of apples on its arrival at Denison before unloading the car. Plaintiff wired the defend- ants in due time that it would take and pay for the apples. Through the Holland Bank at Springfield, the Denison Bank paid defendants $7,000, the purchase price for the 2,000 barrels of apples, taking from de- fendants the following bill of sale:

"Know all men by these presents, that we, W. C. Lane and I. R. Lane, of Springfield, in the county of Greene and State of Missouri, in consideration of the sum of seven thousand dollars to us paid by the State National Bank of Denison, Texas, the receipt whereof is hereby acknowledged, do hereby grant, sell, transfer and deliver, in the cold storage warehouse in the city of Springfield, county of Greene, and State of Missouri, unto the said State National Bank of Denison, Texas, the following goods and chattels, viz.: two thousand barrels of No. 1 apples, to have and to hold and singular the said goods and chattels to the said State National Bank of Denison, Texas, and to its successors and assigns to its own use and behoof forever. And we hereby covenant with the said grantee that we are the lawful owners of the said goods and chattels; that they are free from all liens and incumbrances for cold storage and chattel mortgages and otherwise; that we have good right to sell the same as aforesaid, and that we will warrant and defend the same against the lawful claims and demands of all persons.

"In witness whereof, we, W. C. Lane and I. R. Lane, hereunto set our hands and seals this twenty-first day of December, A. D. 1901.

"I. R. LANE,
"W. C. LANE."

A warehouse receipt was given by the cold storage company to the Denison Bank for the apples, and indorsed on the warehouse receipt that had theretofore been given to the defendants.

The shipping of the apples to the Denison Bank was begun on December 30, 1901, and was continued at short intervals until April 19, 1902, when the last shipment was made.

Plaintiff's evidence tends to show that they sold the first two carloads to customers in Denison and nearby towns; that complaints come in from their customers

about the apples and their salesmen were sent to inspect them and found some of the barrels to contain small, knotty and specked apples that were comparatively worthless, on account of which they were compelled to make restitution; that after this they inspected and repacked all the apples received; that every barrel received was marked "Lane & Lane" or "L. & L." and contained a mark indicating the grade of the apples. That of the 2,000 barrels, 334 were marked "No. 2," and 412 barrels "O. R." (meaning orchard run) that the No. 2 apples were undersized, specked and knotty and they were compelled to sell them at prices ranging from $3 to $1.50 per barrel; that the apples in the barrels marked "O. R." were very much undersized, mostly the size of walnuts, were specked, knotty and a portion of them worthless, and were given away to be fed to the hogs; that for these apples, after throwing out the worthless ones and repacking what was left, they got from $1.50 to $2.50 per barrel; that the barrels marked "No. 1" contained good salable apples and were sold at prices ranging from $5.50 to $6 per barrel.

Plaintiff wrote to the defendants during the shipping period and made complaint of the quality of the apples that were shipped to them and asked them to look after the future shipments and see that none but No. 1 apples were sent, and also notified them that the company would look to them to make reparation for the inferior apples. Defendants did not answer until after the third letter of complaint was written. This answer is dated February 11, 1902, and is as follows:

"Texas Fruit Co.,
    "Denison, Tex.
    "Gentlemen: Yours of the seventeenth is at hand, in which you render complaint about the apples we sold you. In the first place we wrote you before we would sell you the fruit you would have to send a representative to inspect the stock, which you did. Mr. Mazzei

went through the goods, opened many barrels, saw to his entire satisfaction just what he was getting; bought after his own inspection. Contract entered into and signed, of which we hold a copy, plainly stating we suffer no loss from deterioration or slackage of the stock. We paid cold storage and insurance on the 2,000 barrels. The cold storage people gave a storage receipt for the amount of the Denison Bank, which took the matter entirely out of our hands. We offered to superintend the loading. The cold storage people frankly declined to have us do so, stating they had given their receipt to the Denison Bank for the 2,000 barrels, who instructed them to fill orders only as they came from them through Holland's Bank of Springfield, Missouri. The Denison Bank made no provision whatever for us to have anything to do with the fruit in any way. Hence, we are entirely out of the matter. You indicate unless we make up your assumed losses litigation will follow. We wish to say in all kindness and friendship —you got the exact fruit you bought after your own personal inspection; took them just as they were. We have complied with every stipulation of the contract. You certainly understand apples held in cold storage late as the first of January require repacking. More or less deterioration and slackage will take place. If shipped without repacking the faced end will be disturbed. Our contract with you foreshadows what must be anticipated in stock long held in cold storage. So far as us making up any assumed loss or deterioration, we will not do anything of the kind. We never have been in a courtroom to prosecute or defend a suit. We love the law and are willing to abide its excellence.

"Yours most truly,

"LANE & LANE."

On the part of defendants the evidence tends to prove that W. C. Lane resided at Springfield, Missouri, and that he bought about 800 barrels of apples from

farmers in the neighborhood of that city in the fall of 1901; that the apples were carefully sorted by competent and experienced fruit packers and none but strictly No. 1 apples were put in the barrels and sent to cold storage. That I. R. Lane resided in Mountain Grove, Wright county, Missouri, and owned a large orchard, one of the best in the country; that a portion of the apples were gathered from his orchard and barreled under his supervision, and none but strictly No. 1 apples were barreled; that he had a large warehouse in Mountain Grove and bought apples from the farmer's wagons as they brought them in, graded them himself as they were unloaded from the wagons into his warehouse; that they were then placed on a large table and before being put into barrels were again carefully inspected and graded and that none but strictly No. 1 apples were allowed to go into any of the barrels; that the apples thus selected and packed (about 1,300 barrels) were shipped by rail to Springfield and put in cold storage along with the 800 barrels stored by W. C. Lane, his son and partner. That Mazzei spent a part of two days inspecting the apples in cold storage and inspected a great number of them; that after executing the bill of sale, the warehouse receipt they held was credited by the cold storage company with the 2,000 barrels of apples sold and that they had nothing more to do with them or their shipment.

In rebuttal plaintiff offered evidence tending to show that from 75 to 150 barrels of the apples put in cold storage by defendants were marked "O. R.," that Mazzei did not open and inspect exceeding 100 or 150 barrels of the apples in cold storage.

The court refused all the instructions asked by defendant and likewise all asked by the plaintiff, and of its own motion gave the following:

"In this case the plaintiff sues the defendants on account of an alleged difference in the grade of a lot of apples sold by defendants to plaintiff.

"The first count in the plaintiff's petition is bottomed on a breach of warranty. The second count is bottomed on fraud.

"The uncontradicted evidence shows a sale by defendants to plaintiff of 2,000 barrels of apples of grade No. 1, and the mere fact that the bill of sale was made to the bank by direction of plaintiff does not in any way affect the plaintiff's rights to recover, provided the apples were not of the grade contracted for.

"Defendants admit they represented the apples as being of grade No. 1, and also that they contracted for the sale of grade No. 1 apples. Such admissions make this a contract of sale with a warranty that the apples are of a quality of grade No. 1 in the Springfield, Missouri, market, and if you find from the evidence that the apples delivered were of an inferior quality to grade No. 1, your verdict should be for the plaintiff.

"In this connection you are instructed that if at the time of the changing of the warehouse receipt the defendants had in storage the full two thousand barrels of No. 1 apples, then the transaction between the parties of surrendering the old and issuing a new receipt (being in law a delivery of the 2,000 barrels of grade No. 1 apples under the contract) would be a compliance with the contract and plaintiff could not recover.

"The burden of proving that the apples delivered were of an inferior grade to No. 1 apples is on the plaintiff, and he must show the same by a preponderance or greater weight of the evidence, and unless he has so done your verdict should be for the defendant.

"The fact that plaintiff's agent, Mazzei, made a partial inspection of the apples before purchasing would not affect plaintiff's right to recover if the apples were any of them inferior to the contract grade.

"If you find the issues in favor of the plaintiff you will assess its damages at the difference between the value in the Springfield, Missouri, market on the day

of the sale and delivery, that is, December 21, 1901, of grade one apples and the apples actually delivered, notwithstanding what they may have been sold for in the State of Texas.

"You will find the issues for the defendants as to the second count in the petition."

The jury found the issues for plaintiff on the first count, assessing the damages at $1,119 and found the issues on the second count of the petition for defendants.

After unsuccessful motions for new trial and in arrest of judgment, defendants appealed.

*Benj. U. Massey* and *W. D. Tatlow* for appellants.

(1)   The defendants in this case were entitled to go to the jury on clear and unambiguous declarations of law.   And the instructions asked by them should have been given.   Becraft v. Grist, 52 Mo. App. 586; Alberger v. White, 117 Mo. 347; Stanley v. Union Depot, 114 Mo. 606; Bank v. Lonergan, 21 Mo. 46; Belt v. Goode, 31 Mo. 128.   (2) The instructions given by the court, of its own motion, are in the nature of a general dissertation upon the case and a comment and commentary upon the testimony with instructions intermingled and in the phraseology which, taken as a whole, is ambiguous and misleading.   Legg v. Johnson, 23 Mo. App. 590; Clark v. Kitchen, 52 Mo. 316; Young v. Ridenbaugh, 67 Mo. 574; Greer v. Railroad, 80 Mo. 555; Dun v. Dunnaker, 87 Mo. 597; State v. Petit, 114 Mo. 410; State v. Bank, 17 Mo. 482.

*Arch. A. Johnson* for respondent.

(1)   All of the evidence introduced by both sides of the case shows that the apples were warranted to be No. 1 apples, and it just as clearly appears that they were not. That a seller can warrant even against obvious defects is well established.   June & Co. v. Falkinburg,

89 Mo. App. 563; Samuel v. Guin's Est., 49 Mo. App. 8; Branson v. Turner, 77 Mo. 489. (2) If from the character, situation or surroundings of the thing sold, one party is compelled to trust to the warranty or representations of the other, the law will protect him in so doing. Chase v. Rusk, 90 Mo. App. 25; Cahn v. Reid, 18 Mo. App. 127. (3) This doctrine applies not alone to real but also to personal property. Joplin Water Co. v. Bathe, 41 Mo. App. 285; Branson v. Turner, 77 Mo. 489; Grigsby v. Stapleton, 94 Mo. 423. (4) There were a number of such facts in this case and the court's instructions thereon were undoubtedly justified by the evidence in the case, the condition on the record, and matter assumed to be true by the defendants themselves. Dickson v. Railroad, 104 Mo. 491; Walker v. Kansas City, 99 Mo. 647; Pope v. Railroad, 99 Mo. 400; Fields v. Railroad, 80 Mo. 203.

BLAND, P. J.—It is admitted by defendants all the way through their evidence, and the bill of sale shows on its face, that the defendants sold and the plaintiff bought apples that should grade as No. 1. All the barrels of apples stored in the refrigerator by defendants were marked "Lane & Lane" or "L. & L.," and the evidence is that all the barrels received at Denison were marked in the same way and there is no evidence tending to prove, nor is it claimed, that the cold storage company shipped any apples to the Denison Bank, other than the identical apples stored with it by Lane & Lane, so that the only controverted questions of fact in the case on the trial were whether or not the apples delivered came up to the grade sold and purchased, and whether or not they were purchased after inspection, or on an implied warranty as to grade.

The sale and delivery was at Springfield, and defendant's contention is that they were fully inspected at that point before the sale, and that the sale was not on a warranty as to quality or grade, but on inspection by

the buyer of the goods before it purchased. We do not think that the evidence even tends to bear out this contention. Mazzei, according to the evidence most favorable to the defendants, did not inspect as much as ten per cent of the barrels, and the situation of the apples packed in barrels and the barrels piled in tiers one above another almost to the ceiling of the storage room and the time taken by Mazzei to make an inspection, shows conclusively that he could not have inspected ten per cent of the barrels during the time which he took for inspection. Besides, the evidence of both Mazzei and W. C. Lane is, that, after Mazzei had inspected a number of the barrels, he expressed himself as pleased with the quality and size of the apples he had seen and asked W. C. Lane if all the apples would come up to the grade of those he inspected, and Lane assured him that they would and that every barrel would grade No. 1. On this assurance Mazzei then and there decided to take 2,000 barrels at a price then agreed upon.

We think the evidence conclusively shows a sale by sample, carrying an implied warranty that the lot should correspond in size and grade to the sample (the barrels inspected). The evidence as to whether they did so correspond is very conflicting. The jury, however, on substantial evidence, found that they did not. This finding is conclusive here and the judgment should be affirmed, unless error intervened in the giving or the refusing of instructions. It seems to us the instructions given by the court contained a clear, concise and correct exposition of the law of the case and cover every issue tendered by the pleadings that find any support in the evidence. It is, therefore, immaterial whether the refused instructions asked by defendant were correct or not. They got, in those given, all they were entitled to.

The judgment is affirmed. *Reyburn, J.,* concurs; *Goode, J.,* not sitting.