**Katrina WATTS, Plaintiff–Appellant,**

v.

**Raymond SECHLER, Defendant–Respondent.**

No. 25873.

Missouri Court of Appeals,
Southern District,
Division Two.

June 30, 2004.

Application for Transfer Denied
July 22, 2004.

Application for Transfer Denied
Aug. 24, 2004.

G. Spencer Miller, Gladstone, for appellant.

Joseph P. Winget, Scott E. Bellm, Turner, Reid, Duncan, Loomer & Patton, P.C., Springfield, for respondent.

KENNETH W. SHRUM, Judge.

Katrina Watts ("Plaintiff") sued Raymond Sechler ("Defendant") for damages, alleging that alfalfa hay she bought from Defendant poisoned her dairy cattle. Before trial, the court sustained Defendant's motion to dismiss Plaintiff's *res ipsa loquitur* count. The case went to trial on three other counts. At the close of Plaintiff's evidence, she opted to proceed on her "implied warranty of fitness for consumption" theory of recovery. Thereon, the trial court sustained Defendant's motion for directed verdict. This appeal followed.[1]

We affirm in part; we reverse and remand in part.

## FACTS AND PROCEDURAL HISTORY

In 1994, Plaintiff owned a dairy herd and decided to use alfalfa hay as part of her feeding program. To implement her decision, Plaintiff began buying "second cutting" alfalfa from Defendant.

During the 1996 hay season, Plaintiff bought both first and second cutting alfalfa from Defendant. As before, this hay was in "large round bale" form and all bales were "net wrapped." Initially, Plaintiff fed the 1996 "first cutting" alfalfa to her cows without adverse effects. Once Plaintiff started feeding the "second cutting" of the 1996 hay crop, however, her cattle became very sick. Many animals died, milk production dropped, cows began to miscarry, and many would not breed back in the normal sequence of events.

Ultimately, Plaintiff came to believe that the hay purchased from Defendant caused the illness in her livestock. Dr. Gardner, a veterinarian hired by Plaintiff, tested the subject hay. The tests revealed the "second cut" hay contained aflatoxin. From this and other investigation, Dr. Gardner concluded that Plaintiff's dairy herd was poisoned by the hay Defendant sold to Plaintiff.

---

1. An earlier appeal was dismissed. *Watts v. Sechler,* 114 S.W.3d 425 (Mo.App.2003). Dismissal was mandated because "a final appealable judgment [did] not exist." *Id.* at 427. The deficiency in the judgment no longer attends.

The third count of Plaintiff's petition was entitled "Breach of Implied Warranty." In it, Plaintiff alleged that Defendant was a merchant engaged in the business of selling hay, he produced hay and sold it to Plaintiff knowing she would use it as feed for her dairy cattle, and she bought the hay in reliance upon Defendant's superior skill and judgment as a producer of hay.

In another count, Plaintiff sought recovery from Defendant on a *res ipsa loquitur* theory, i.e., that Defendant had managed and controlled the hay prior to its sale to Plaintiff, Defendant had superior knowledge about why the hay was toxic, and the herd illness would not ordinarily have occurred if Defendant had used ordinary care. As stated above, the court dismissed the *res ipsa* count at the request of Defendant before trial.

At the close of Plaintiff's case, Defendant moved for a directed verdict.[2] In urging dismissal, Defendant suggested the Plaintiff's implied warranty count was a "common law" claim, specifically a claim for breach of an implied warranty of fitness for consumption by animals. Plaintiff's lawyer *agreed* with Defendant's characterization as he told the court that Plaintiff was primarily relying upon the common law as illustrated by *Borman v. O'Donley,* 364 S.W.2d 31 (Mo.App.1962). After reading the *Borman* case, the trial judge responded as follows:

> "[A]s I understand the law in this area, the doctrine and the cause of action is a common law cause of action not a statutory cause of action. We're not operating here under the Uniform Commercial Code, implied warranties of merchanta-

bility, or implied warranties of fitness for a particular purpose. We're operating under a common law cause of action of warranty of fitness for consumption which was certainly extended in the *Borman* case to processed animal food...."

The judge's assertion about what Plaintiff had elected as her remedy was not challenged or questioned by Plaintiff. With the case in that posture, the trial judge found that "hay is a raw material ... and no cause of action exists in ... Missouri for a raw material." He then directed a verdict against Plaintiff.

## DISCUSSION AND DECISION

*Point I: Directed Verdict On Implied Warranty Claim*

■ Plaintiff's first point charges the trial judge erred by directing a verdict for Defendant on Plaintiff's "breach of implied warranty" count because her "at-trial" evidence "established a prima facie case for breach of implied warranty of merchantability" for the subject hay in that "Defendant ... was a merchant and the hay that he sold to [Plaintiff] was not fit for ordinary purposes for which the hay would be used."

Although Plaintiff's point relied on never mentions section 400.2–314, RSMo (2000), a Uniform Commercial Code ("U.C.C.") provision, the first part of her argument beneath the point advances the notion that her "implied warranty" count was based on this U.C.C. provision.[3] Still later in her briefing of Point I, Plaintiff broadens her claim of trial court error by contending she also made a submissible case for breach of an "implied warranty of fitness for con-

---

2. As arguments were made on Defendant's motion to dismiss at the close of Plaintiff's evidence, Plaintiff told the court she was abandoning her breach of express warranty count and negligence count.

3. As provided in section 400.2–314(1), "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind."

sumption by animals," a warranty derived from common law. *See Midwest Game Co. v. M.F.A. Milling Co.*, 320 S.W.2d 547 (Mo.1959).

Defendant's initial response urges affirmance by pointing out that, until this appeal, Plaintiff never asserted a claim for breach of a U.C.C. implied warranty of merchantability, either by pleading, or during trial, or in post-trial motions. With that as his premise, Defendant insists that we cannot convict the trial court of error on an issue never put before it to decide, *Barner v. The Mo. Gaming Co.*, 48 S.W.3d 46–50[15] (Mo.App.2001); that Plaintiff is bound by the position she took in the trial court, namely, she was proceeding on the common law claim, and we can only review the case upon that theory. *See Reese v. Ryan's Family Steakhouses, Inc.*, 19 S.W.3d 749, 752[9] (Mo.App.2000).

Arguably, Plaintiff's petition pleaded the elements of a U.C.C. implied warranty of merchantability claim, albeit, without citing the applicable statute or pleading notice. However, that is not the theory Plaintiff told the trial judge and defense counsel she was pursuing. In answer to Defendant's motion for directed verdict at the close of Plaintiff's case, Plaintiff argued she had made a case of "implied warranty of fitness for consumption by animals." The judge then reviewed the case cited by Plaintiff and, having done so, declared what he understood to be Plaintiff's position, namely, that she was submitting her case on the common law theory of recovery and not on U.C.C. principles of implied warranty of merchantability. Thereon, Plaintiff stood silent and thus confirmed what she had said earlier; she opted to submit her case on the common law theory. Plaintiff's position on this re-

mained unchanged during post-trial filings and arguments to the trial judge.

In sum, Defendant's complaint is valid. Plaintiff is asking this court to reverse on a theory never presented to the trial court. This we will not do. Appellate courts have repeatedly held that a party cannot present his or her cause of action on one theory in the trial court and, if unsuccessful there, argue a different theory in an appellate court. *Sinclair Refining Co. v. Wyatt*, 149 S.W.2d 353, 354[1] (Mo.1941); *Vintila v. Drassen*, 52 S.W.3d 28, 38[11] (Mo.App.2001). Review on appeal is limited to issues and theories heard by the trial judge. *State Farm Mut. Auto. Ins. Co. v. Esswein*, 43 S.W.3d 833, 839[7] (Mo.App.2000). Having taken the position at trial that her cause of action was grounded on common law principles, Plaintiff is barred from arguing a different theory on appeal to convict the trial court of error. *Barner*, S.W.3d at 50 [14,15].

Plaintiff's second claim under Point I is that reversal is mandated because Plaintiff made a submissible case on her common law implied warranty claim of fitness for consumption. In response, Defendant correctly points out that this argument is not properly briefed. This is so because it is an argument that does not follow the order of "Points Relied On" and is one not included in the "Points Relied On." This is a violation of Rule 84.04(e)and would justify this court's refusal to review such argument.[4] *See* Rule 84.13.

Even so, we exercise our discretion to proceed with the appeal on its merits. We do so because we have been able to determine the facts of the case and the issues to be decided from the briefs and transcript. *Norman v. Ballentine*, 627 S.W.2d 83, 85

---

**4.** In part, Rule 84.04(e) requires the argument section of a brief to "substantially follow the order of the 'Points Relied On' " and "be limited to those errors included in the 'Points Relied On.' "

(Mo.App.1981). Moreover, Defendant's lawyers have been able to perform their briefing obligations and have responded to Plaintiff's argument that she made a submissible case on her common law implied warranty claim. *See Twelve Oaks Motor Inn, Inc. v. Strahan*, 110 S.W.3d 404, 407 n. 3 (Mo.App.2003); *Daniel v. Indiana Mills & Mfg., Inc.*, 103 S.W.3d 302, 312 (Mo.App.2003); *Keeney v. Mo. Highway and Transp. Comm'n*, 70 S.W.3d 597, 598 n. 1 (Mo.App.2002).

The dispute in this prong of Point I centers on two phrases, namely "raw state" food and "processed and packaged" food. These phrases appeared in cases that found an implied warranty of fitness for consumption accompanied the sale of animal feed. *See Midwest*, 320 S.W.2d 547; *Albers Milling Co. v. Carney*, 341 S.W.2d 117 (Mo.1960); *Borman*, 364 S.W.2d 31. *Midwest* was the first case to extend the implied warranty of fitness for consumption to animal feed when there was no privity between the damaged consumer and the feed manufacturer. The *Midwest* plaintiff sought damages from a manufacturer of fish food after the manufacturer's pre-packaged and processed fish food killed some of plaintiff's fish. In part, the plaintiff alleged that a common law implied warranty of fitness entitled it to recover. It did so without alleging privity of contract between the defendant manufacturer and the plaintiff. On appeal, the Supreme Court of Missouri first recounted that when food is sold for immediate human consumption, there is an implied warranty that the food is fit for human consumption; that "a buyer of packaged food products may recover from the manufacturer upon an implied warranty of fitness even though there is no express privity of contract between the manufacturer and buyer." *Id.* at 550[4]. The *Midwest* court noted that some states had refused to extend the implied warranty of fitness to the

sale of food for animals, but held the better view was that the same warranty of fitness for consumption attaches "in cases like the instant one where the [animal] *food is not in its raw state but has been processed and packaged by the manufacturer.*" *Id.* at 550[6] (emphasis supplied).

Although the trial judge here did not specifically mention *Midwest* when he directed a verdict against Plaintiff, it is clear that the italicized language from *Midwest* formed the basis for his ruling. Consequently, the dispositive issue on appeal is the relevance and applicability of those phrases to this case, if any. This follows because Defendant argues the trial court correctly ruled there can be no implied warranty here because, as a matter of law, baled alfalfa hay is "raw" food for animals. Contrarily, Plaintiff argues "that the trial court erred ... because granting the motion was contrary to the evidence of the case as well as the applicable law."

To understand *Midwest* and its progeny, we look first at common law implied warranties generally and how they unfolded in Missouri. Historically, implied warranties were said to arise by operation of law under the facts and circumstances of a particular case in accordance with the presumed intention of the parties. *See Worley v. Procter & Gamble Mfg. Co.*, 241 Mo.App. 1114, 253 S.W.2d 532, 536–37 (1952); *Belt Seed Co. v. Mitchelhill Seed Co.*, 236 Mo.App. 142, 153 S.W.2d 106, 112–13 (1941); 77 C.J.S. *Sales*, § 314 at 1155–56 (1952).

When implied warranty theory was first advanced as a remedy, the courts approved its use only when there was a sale or other contractual relationship between the two parties to the dispute. *Kellogg Bridge Co. v. Hamilton*, 110 U.S. 108, 112–16, 3 S.Ct. 537, 540–43, 28 L.Ed. 86 (1884); *Worley*, 253 S.W.2d at 536–37; *Madouros*

v. Kansas City Coca–Cola Bottling Co., 230 Mo.App. 275, 90 S.W.2d 445, 448–50 (1936). Thus, a person not a party to the contract could not sue on an implied warranty theory; *privity of contract* was a prerequisite to implying a warranty of fitness. *Degouveia v. H.D. Lee Mercantile Co.*, 231 Mo.App. 447, 100 S.W.2d 336, 337[2] (1936); *Madouros*, 90 S.W.2d at 448. Stated otherwise, implied warranties were only recognized in cases involving *direct sales*, i.e., sales between two consumers, or between consumers and retailers, or between retailers and retailers, or between retailers and manufacturers. *See, e.g., Barton v. Dowis*, 315 Mo. 226, 285 S.W. 988 (1926) (hogs); *Ashford v. Schoop*, 81 Mo.App. 539 (1899) (apples); *Lee v. J.B. Sickles Saddlery Co.*, 38 Mo.App. 201 (1889) (straw); *Whitaker v. McCormick*, 6 Mo.App. 114 (1878) (corn).

Significantly, where privity existed, early cases found implied warranties accompanied direct sales of products without regard to whether the commodity or article sold was "raw" or "processed." *See, e.g., Fantroy v. Schirmer*, 296 S.W. 235 (Mo.App.1927) (product sold as buttermilk was simply a mixture of skim milk and whole milk); *Texas Fruit Co. v. Lane*, 101 Mo.App. 712, 74 S.W. 400 (1903) (apples). In such cases, the courts focused upon the *nature* of the implied warranty. Illustrative of this is *Sickles*, 38 Mo.App. 201.

In *Sickles*, a farmer sold straw to a manufacturer for use in making horse collars. A dispute arose over payment, with the manufacturer claiming the straw had excessive weed content and did not comport with the implied warranty of fitness that accompanied the sale thereof. On appeal, the common law implied warranty rule was stated generally as follows:

"In all executory contracts for the sale of any commodity, when no opportunity for inspection is offered, there is always an implied warranty that the article sold will be of merchantable quality and condition; and if the article is purchased for a particular purpose, and this was known to the vendor, at the time of making the contract, then the law will annex to every such contract of sale, the implied condition that the article shall be reasonably fit for the purpose for which it was bought...."

*Id.* at 205. Nothing in this general statement of the law excluded the possibility of an implied warranty attaching to the sale of "non-processed" or "raw" agricultural products.

By 1927, there was a "well-established" rule "that accompanying all sales by a retail dealer of articles of food for immediate use there is an implied warranty that the same is fit for human consumption." *Fantroy*, 296 S.W. at 237. The stated reasons for the rule were numerous, but foremost among them was the promotion of protecting human life. *See Fantroy*, 296 S.W. at 237–38 and cases therein cited. *See also Degouveia*, 100 S.W.2d at 338–39; *Klein v. Duchess Sandwich Co.*, 14 Cal.2d 272, 93 P.2d 799, 801–05 (1939). However, neither these cases, nor any other Missouri case found by this court, have restricted the breadth of the common law implied warranty of fitness for human consumption to "processed" foods, or excluded foods in their "raw" state from such warranty, when there was a direct sale of the food item, i.e., when privity existed.

As the common law of implied warranty of fitness for consumption evolved, the privity rule was not followed blindly and without exception. *Westerhold v. Carroll*, 419 S.W.2d 73, 77 (Mo.1967). To the contrary, "when the application of the rule would produce a result contrary to the requirements of essential justice and sound public policy, it [was] whittled away by exceptions." *Id.* It was an exception to

the privity rule that gave rise to the distinction (alluded to in *Midwest,* 320 S.W.2d at 550) between "processed and packaged food" and food in its "raw" state. *See Madouros,* 230 Mo.App. 275, 90 S.W.2d 445.

In *Madouros,* the plaintiff bought a bottle of Coca–Cola from a retail dealer. The retailer had bought the subject product from the manufacturer. The bottle contained a dead mouse, and the plaintiff became violently ill upon drinking from the bottle. He sued the manufacturer directly, prevailed, and was awarded damages. On appeal it was held that the manufacturer could be liable to the plaintiff under an implied warranty theory despite the lack of privity. *Id.* at 448–50. The court reasoned that society was changing, including the way food was prepared, bought and sold; that the manufacturer was now preparing food, packaging it, and marketing the product to the ultimate consumer; that in such situations, retail dealers were merely intermediaries handling the articles to be sold to the consumer and had no opportunity to inspect the food or drink as it was typically sealed or packaged; and the manufacturer was the party who should bear the burden when processed and packaged foods were not wholesome and caused injury and damage to a consumer. *Id.* The *Madouros* court concluded that:

"Under modern conditions, when products of food or drink have been prepared under the exclusive supervision of the manufacturer and the consumer must take them as they are supplied, the representations constitute an implied contract, or implied warranty, to the unknown and helpless consumer that the article is good and wholesome and fit for use. If privity of contract is required, then under the situation and circumstances of modern merchandise in such matters, privity of contract exists in the consciousness and understanding of all right-thinking persons."

*Id.* at 450.

From the foregoing we discern that the common law implied warranty of fitness of food for consumption in Missouri includes these principles: First, a party damaged because processed and packaged food was unwholesome can recover damages from the manufacturer without showing privity; a direct sale is not a prerequisite to the existence of a common law implied warranty of fitness for consumption of processed and packaged food. Second, if privity exists, the common law implied warranty of fitness for consumption accompanies the sale of food, even food in its "raw state."

With these principles in mind and considering the fact that the *Midwest* court used the "processed and packaged" versus "raw state" language when it extended the common law implied warranty of fitness for consumption to animal feed, we conclude that *Midwest* stands for two propositions: First, a common law implied warranty of fitness for consumption extends to animal food, whether raw or processed and packaged, when, as here, there is a *direct sale* of the food product, i.e., where privity exists.[5] Second, a *manufacturer* of animal feed *may* only be liable to a party not in privity with the manufacturer based on common law implied warranty of fitness for consumption theory *when* the feed is *processed and packaged,* and the

5. In so stating, we acknowledge that privity existed in *Borman,* yet the *Borman* court made an extended analysis of whether corn silage was "raw state" feed, or "processed" feed, and the case turned on the court's conclusion that the corn silage qualified as a "processed" product. 364 S.W.2d at 36. This court believes, however, that the "raw state" versus "processed" analysis in *Borman* was unnecessary.

buyer purchases it in the original package.[6]

If any confirmation is needed for the first of these proportions (which is dispositive of this case), we find it in case law used by the *Midwest* court to extend the common law implied warranty to sales of animal feed. 320 S.W.2d at 550. Both cases that *Midwest* found controlling, *Larson v. Farmers' Warehouse Co.*, 161 Wash. 640, 297 P. 753 (1931), and *Judd v. H.S. Coe & Co.*, 117 Conn. 510, 169 A. 270 (1933), involved direct sales, that is, privity existed. More than that, the *Larson* case dealt with a direct sale of baled alfalfa hay from a vendor to a vendee, exactly the facts of this case. The *Larson* court found the vendor liable for damages to vendee's cattle on the basis that vendor had impliedly warranted that the baled hay "was not only of the kind and quality ordered, but was, as a lot, generally free from deleterious substances, poisonous to stock." *Id.* at 756. In turn, the *Larson* court relied on *Gussner v. Miller*, 44 N.D. 587, 176 N.W. 359, 362 (1920), another case that found an implied warranty of fitness arose from the direct sale of alfalfa hay.[7]

In sum, we hold that Plaintiff presented evidence from which a jury could find that a common law implied warranty of fitness for consumption accompanied the sale of this alfalfa hay by Defendant to Plaintiff. This follows because this was a direct sale by the producer to the consumer; privity existed. Consequently, whether the alfalfa hay sold here should have been classified as an agricultural product in its "raw state" or "processed and packaged" was irrelevant. The raw/processed distinction (if still viable) only attends when privity does not exist between the damaged consumer and the manufacturer. Because privity existed here, the trial court erred in directing a verdict for Defendant at the close of Plaintiff's case by concluding that alfalfa hay was an agricultural product in its "raw state," and as a consequence, the common law implied warranty was not available as a remedy.[8] Point I is granted.

*Point II: Dismissal Of Plaintiff's Res Ipsa Loquitur Count*

In her second point relied on, Plaintiff asserts that if this court treats all alleged

---

**6.** We do not ignore *Albers*, 341 S.W.2d 117. There, privity of contract existed, yet that court used the "processed and packaged" language in the opinion. Arguably, that could be read as some indication that the "processed and packaging" requirement must be met even if there was privity. Such argument is answered, however, by the following in *Albers:* "In some respects the instant case is more favorable to a holding of implied warranty than [was] *Midwest* because here (although the feed was actually sold by Moreland) there was privity of contract between plaintiff and defendants." 341 S.W.2d at 120. We believe this sentence supports our interpretation of *Midwest*.

**7.** Any doubt about the continued existence of a cause of action based on the common law implied warranty of fitness for consumption in an animal food case is removed by reading MAI 25.02 (2002), and the Committee Comment (1996 Revision) thereto. Significantly,

this instruction does not require a jury to find that the feed was "processed and packaged." In our view, that would be required (if at all) when the evidence showed an absence of privity. *See also Sanders v. Hartville Milling Co.*, 14 S.W.3d 188, 214 (Mo.App.2000) (case approving MAI 25.02 against claim that it gave jury roving commission because it did not specifically refer to aflatoxin, which had allegedly caused the damage to a farmer's dairy herd).

**8.** Even if a common law warranty of fitness for consumption accompanies a sale of animal feed (including a direct sale) *only if* the feed is packaged and processed (as the trial court found), the fact that the *Midwest* court relied on *Larson* (which involved the sale of baled alfalfa hay) strongly suggests that baled alfalfa hay should be viewed as "processed and packaged" as contemplated by the *Midwest* court.

facts in the *res ipsa loquitur* count as true and construes all allegations favorable to Plaintiff as required under our standard of review, then it becomes clear that the pleadings invoke principles of substantive *res ipsa loquitur* law upon which relief can be granted; accordingly, she insists that reversal is mandated. *See generally, Pavia v. Childs,* 951 S.W.2d 700, 701 (Mo. App.1997); *Workman v. Vader,* 854 S.W.2d 560, 562 (Mo.App.1993).

Plaintiff's *res ipsa loquitur* pleading alleges, *inter alia,* that certain hay Plaintiff bought from Defendant "contained aflatoxin or other materials which are substances toxic to dairy animals[;]" that "as a direct result of the dairy herd eating the [D]efendant's hay, the cattle became sick, aborted calves, failed to rebreed, decreased milk production, and in some instances died[;]" and the "herd-wide illness" thus described "would not ordinarily happen if [D]efendant had used due care." Plaintiff insists that this, together with other allegations, was a sufficient fact pleading to invoke the *res ipsa* doctrine; consequently, she urges reversal.

 We start by noting:

"[R]es ipsa loquitur* is a rule of evidence whereby a submissible issue of negligence may be made by adducing a particular kind of circumstantial evidence, viz., by showing the fact of an occurrence which, because of its character and circumstances, permits a jury to draw a rebuttable inference, based on the common knowledge or experience of laymen, that the causes of the occurrence in question do not ordinarily exist in the absence of negligence on the part of the one in control."

*Hasemeier v. Smith,* 361 S.W.2d 697, 700[4] (Mo.banc 1962).

Because Plaintiff's Count IV was dismissed before trial, we do not concern ourselves with what the evidence might show. The only issue is the sufficiency of Plaintiff's petition. Ordinarily, the doctrine of *res ipsa loquitur* has no application to the pleadings. *Carter v. Skelly Oil Co.,* 363 Mo. 570, 252 S.W.2d 306, 309[4] (1952). This follows because it is an inference aiding in the proof. *Id.*

 On the other hand, attempted invocation of the *res ipsa loquitur* doctrine does not relieve a party of pleading general negligence, that is, pleading "the injury and such attendant circumstances as will support an inference of negligence which the jury must find." *Glossip v. Kelly,* 228 Mo.App. 392, 67 S.W.2d 513, 514[2] (1934). The question of whether the facts alleged in a petition are sufficient to invoke the *res ipsa* doctrine is a question of law. *Gateway Chemical Co. v. Groves,* 338 S.W.2d 83, 87[5] (Mo.1960). This is explained more fully in *Epps v. Ragsdale,* 429 S.W.2d 798 (Mo.App.1968), as follows:

"[W]hether injuries like plaintiff's ordinarily happen when due care is used . . . is a question of law since *it is a judicial function to determine whether a set of circumstances does, as a matter of law, permit a certain inference.* The question is answered when the court can take judicial notice, based on common knowledge and experience, that such an injury probably would not have occurred but for negligence in some form."

*Id.* at 800[3,4] (citations omitted) (emphasis supplied).

 This court is not persuaded that it is a matter of common knowledge or experience that the development of aflatoxin in alfalfa hay probably bespeaks negligence in some form. Stated otherwise, Plaintiff's allegations do not supply the absent but essential prerequisite to the application of the *res ipsa* doctrine, namely that laymen would know, based on their common knowledge or experience, that alfalfa hay

will not contain aflatoxin or other toxic substances, unless the person producing and selling the hay was negligent in some way. *See Hasemeier,* 361 S.W.2d at 701.

The trial court was entitled to look at the wisdom it had gained from common experience in deciding, whether as a matter of law, it should allow Plaintiff to submit her case on a theory of *res ipsa loquitur. Redfield v. Beverly Health and Rehab. Inc.,* 42 S.W.3d 703, 715[37] (Mo. App.2001). No error was committed when the court found that Plaintiff's petition, as structured, did not invoke the application of the *res ipsa loquitur* doctrine to the stated occurrence. *See Hasemeier,* 361 S.W.2d at 701. Sustension of the Defendant' motion to dismiss was proper.[9] Point II is denied.

The judgment of the trial court is reversed to the extent that it directed a verdict against Plaintiff on her claim of breach of a common law implied warranty of fitness of food for consumption by animals and the case is remanded. In all other respects, the judgment is affirmed.

PARRISH and BATES, JJ., concur.

---

**9.** The record shows Plaintiff could not have submitted on a *res ipsa loquitur* theory even if the trial judge had not dismissed that count before trial. This is true because Plaintiff's expert testified unequivocally that aflatoxin can ordinarily occur in hay without regard to any person's negligence. Such testimony confirmed this was not a *res ipsa loquitur* case. *See Spears v. Capital Region Med. Ctr.,* 86 S.W.3d 58, 61[7] (Mo.App.2002).