## MAKEMAN TABLET COMPANY, Respondent, v. CHAPMAN, Appellant.

### St. Louis Court of Appeals, May 8, 1906.

1. **SALES: Failure of Consideration: Performance by Seller.** In an action for the purchase price of certain medicines where the contract of sale provided that the seller should furnish certain advertising matter upon request of the purchaser and no request for such advertising matter was made, the purchaser could not defeat the action on the ground that there was a want of consideration in the failure of the seller to furnish such advertising matter.

2. ———: ———: ———. And in such case, in the absence of a request by the purchaser for the advertising matter mentioned in the contract, where some of such advertising matter was furnished but not all, it was no defense that the advertising matter was worthless for the purpose; the doctrine of implied warranty on the part of the seller that the thing sold will be reasonably fit for the purpose intended, does not apply.

Appeal from Louisiana Court of Common Pleas.—*Hon. David H. Eby,* Judge.

Affirmed.

*James W. Reynolds* for appellant.

(1) The advertising matter was a distinct part of the consideration and failure to provide it either

in quantity or quality is a good defense. Tiedeman on Commercial Paper, sec. 203; Beeler v. Franklin, 57 Mo. 466. Non-performance of the contract on the part of plaintiff is a good defense in this action. Tiedeman on Commercial Paper, sec. 204. (2) The contract reciting that the object of the agency is to thoroughly establish the sale of the tablets there can be no other construction placed upon it than that the advertising matter mentioned in the contract would be fit for that purpose. The entire evidence showing the advertising materials to be utterly worthless for the purposes for which it was contracted, the instructions do not properly declare the law in this case. 15 Am. and Eng. Ency. Law (2 Ed.), p. 1231; Benjamin on Sales (6 Ed.), secs. 661, 661a; Lee v. Sickles Saddlery Co., 38 Mo. App. 201.

*Matson & May* for respondent.

The question of failure of consideration was fairly submitted to the jury; and where the purchaser gets the specific article which he intends to buy, and the chattel is of some value, there is neither a total nor partial failure of consideration. In this case, therefore, as the purchaser got what he bought, there was not a partial failure of consideration. Danforth v. Crookshanks, 68 Mo. App. 311.

STATEMENT.—The suit is on an accepted draft, as follows:

"$34.20                           Chicago, 5-10, 1904.

"Sixty days after date pay to the order of ourselves thirty-four and 20-100 dollars value received and charge to account of

"To C. J. Chapman,          Accepted          "MAKE-MAN TABLET CO.,
    "Louisiana, Mo.          Chas. J.             "By Peter J. Elbert, Secy."
"No. 570."                   Chapman.

The plaintiff is an Illinois corporation with head-
quarters in Chicago.  Its business is the manufacture
and sale of what is known as "Make-Man tablets."  The
defendant is a retail druggist in the city of Louisiana,
Missouri.  The draft and its acceptance arose out of the
following state of facts:

Plaintiff's traveling salesman called upon defend-
ant at Louisiana and sold to him, under the following
written contract, a supply of make-man tablets in con-
sideration whereof the defendant accepted the draft in
suit.  The contract is as follows:

"FULL PRICE CONTRACT.

"This agreement made and entered into this 10th
day of May, 1904, by and between the Make-Man Tablet
Co., a corporation organized and doing business under
the laws of the State of Illinois, and Chas. Chapman
of Louisiana, county of Pike, State of Missouri, to be
known hereafter as the retail dealer, shows—

"1.  That the Make-Man Tablet Company is hereby
authorized and requested to ship to said retail dealer
gross of Make-Man tablets as noted on order contained
on other side, at the rate of $48 per gross, f. o. b. Louis-
iana, which goods the retail dealer agrees to pay for in
thirty days from shipment.

"2.  That in consideration of this order the Make-
Man Tablet Company hereby agrees:

"a.  To give the retail dealer the exclusive sale and
sole agency for the sale of Make-Man tablets in the fol-
lowing territory:  Louisiana, for a period of one year
from date.

"b.  To continue giving the same bonus as allowed
on the within order on all future purchases during the
life of this agency.

"c.  To furnish 1500 booklets to the retail dealer
four times a year upon request.

"d. To send window displays as often during the year as the retail dealer may reasonably request. Special designs to be arranged each time. One a month 18x8 full glass.

"e. To furnish the retail dealer, free of expense, all samples for distribution purposes upon request.

"f. To prepay transportation charges on all advertising matter sent to the retail dealer, from time to time, during the life of this agency.

"g. To follow up with personal letters all consumers who receive samples, provided the retail dealer sends in to the Make-Man Tablet Company all the coupons, showing to whom samples were delivered, and such consumers, when they have become actual purchasers of Make-Man tablets, are to receive the benefit of the free doctor's department established by the Make-Man Tablet Company, and all prescriptions which may be sent from this doctors department are to be sent to patients with the instructions to have such prescriptions filled at the drug store of the retail dealer.

"h. Not to sell Make-Man tablets to jobbers, or cutters, and only to legitimate retail dealers who are not on the cutoff list of the N. A. R. D., and in order to make this entirely binding on the Make-Man Tablet Company, it is further understood that in the event that it be shown by the retail dealer that the Make-Man Tablet Company has sold, during the life of the agency, or offered to sell Make-Man tablets to any jobber, the retail dealer can return such quantity of Make-Man tablets which he may have on hand and the Make-Man Tablet Company agrees to send its check to the retail dealer in payment in full of such unsold goods at full purchase price.

"i. To give the retail dealer the benefit of all special advertising which is not enumerated above and which

may be done in such retail dealer's territory during the life of this agency.

"j.   To send the retail dealer all orders which may be received by mail from consumers in the retail dealer's territory during the life of this agency.   This clause means that the Make-Man Tablet Company will give the retail dealer the full benefit of all sales which are created, either through the influence of the direct advertising, through the retailer's store, or by any other class of advertising which the Make-Man Tablet Company may use.

"3.   The object of this agency is for the mutual benefits to be derived by the Make-Man Tablet Company, and the retail dealer in thoroughly establishing the sale of Make-Man tablets in the above described territory, and to this end the retail dealer agrees:

"a.   Not to sell or offer for sale Make-Man tablets at less than 50c per box, or six boxes for $2.50.

"b.   Not to sell or offer for sale, at any price, Make-Man tablets to jobbers, cutters or department stores.

"c.   To co-operate with the Make-Man Tablet Company in every way possible to get Make-Man Tablets firmly established in the above described territory.

"d.   At any time during the continuance of this agency to advertise the Make-Man Tablet Company, whenever additional advertising matter may be required.

"e.   That if it is found that the retail dealer has violated any of the above promises, the Make-Man Tablet Company can compel the retail dealer to deliver all unsold Make-Man tablets to the Make-Man Tablet Company, upon payment for such goods which may remain in the hands of the retail dealer, at full amount paid therefor.

"f.   That this order is not subject to countermand; that it is made out in original and duplicate, and the

retail dealer has retained duplicate and there are no other agrements, verbal or otherwise, not expressed herein or contained on the back hereof.

"CHAS. J. CHAPMAN, Retail Dealer.

"Make-Man Tablet Co.,

Per R. S. Clower.

"Make-Man Tablet Company, Chicago.

"Date Sold, 5-10-04.          "Salesman, Clower.

"Terms, closed by acceptance.

"Sold to Chas. Chapman; town, Louisiana; State, Mo.; Quantity, one- and one-half gross Make-Man tablets; Price per gross, $48; total $72.

"To allow $2.50 per 1000 for book distribution.

"1½ or as B . . . . .

"(Duplicate.)   This order is subject to conditions on back hereof."

The plaintiff shipped to defendant the tablets mentioned, also about one thousand or one thousand one hundred advertising booklets and a window display. It did not ship to him at any time the eighteen-by-eight full glass display mentioned in the contract. Defendant caused the booklets to be distributed and placed the window display in his window. The company did not voluntarily supply him with any further advertising matter, nor did he request it to do so. At the expiration of sixty days, having failed to sell any of the tablets, he repacked and shipped them to the company to whom he wrote and mailed the following letter on the same date, relative thereto:

"Louisiana, Mo., 7-5, 1904.

"Make-Man Tablet Co., Chicago, Ill.

"Gentlemen: I have shipped via C. & A. R. R. Co., the shipment M. M. Tablets. I have not sold a box nor had an inquiry. The promises made to move them made by your Agt. has not materialized. You can use them, I can't.          Yours,

"C. H. CHAPMAN."

Upon the draft being presented, he declined to pay it and in this suit against him, he sets up failure of consideration. The evidence on the part of the defense tended to prove the facts stated, and further, that the tablets were worthless. The defendant gave evidence that he had sold none of them although he had endeavored to do so; that none of the tablets had been analyzed by him or any one for him but that from examination, he was convinced they had no medicinal value, etc. His construction of the contract being that it was the company's duty to do so, he further complained that it failed to send him one thousand five hundred booklets, sending him only one thousand one hundred instead; also that it failed to supply him with the eighteen-by-eight full glass display once a month. He admitted, however, that he had made no request on the company for this or any other advertising matter. It was further shown that the advertising matter supplied to him voluntarily by the company was of little value for the purpose. No complaint was made thereof by him nor did he request other sufficient or additional advertising matter. It is not shown that the company failed to furnish the defendant with the coupons mentioned in the contract. All that is shown with respect thereto is that the defendant did not at any time return any such coupons to the company, upon receipt of which the company was to send letters to the prospective customers, as contemplated in the contract. The inference is that the company furnished the coupons.

Plaintiff introduced in evidence a copy of a letter written by it to defendant replying to the letter of defendant herein above copied.

The first assignment of error in this court is the introduction of the letter which is denominated self-serving on the part of the plaintiff. It appears from the bill of exceptions that there was neither an objec-

tion nor exception interposed or saved to the introduction of the letter in question and therefore it will not be further noticed. The trial was had before a jury and the verdict and finding was for the plaintiff. Defendant appeals.

NORTONI, J. (after stating the facts).—1. The question of the alleged failure of consideration in so far as the tablets themselves are concerned was properly submitted under appropriate instructions and found for plaintiff, and after giving proper preliminary instructions, the court instructed the jury on the part of plaintiff with respect to the advertising features of the contract, as follows:

"5. Although the jury may believe from the evidence that the advertising matter sent by plaintiff to defendant fell short of the number and character called for in the contract of purchase, yet under said contract it was the duty of the defendant to advise the plaintiff whenever additional advertising matter might be required by him, and the court instructs you that defendant did not so advise plaintiff of such requirement, if any, and defendant cannot be heard to complain of plaintiff's failure, if any, to do so, and defendant is not entitled to recover on that ground."

The principal argument advanced here for reversal is that by this instruction the court placed an erroneous construction upon the written contract inasmuch as the jury were told thereby that plaintiff was not to furnish advertising matter until the defendant requested it. It is argued by appellant that under the contract, it was the duty of the plaintiff to voluntarily furnish fifteen hundred booklets four times a year, also an eighteen-by-eight full glass window display advertisement once a month, etc. To settle this controversy with accuracy, let us examine the provisions of the contract.

Now, first, with respect to the booklets. The contract does not require the plaintiff to furnish fifteen hun-

dred or any other number thereof, unless it be requested to do so by the defendant. By reference to subdivision *c* of paragraph 2, it will be seen that the company agreed "to furnish fifteen hundred booklets to the retail dealer four times a year *upon request.*" It appearing that the defendant made no request therefor, which was a precedent condition on his part, no default could be predicated upon the company's failure to furnish the same. The fact that it had furnished one thousand or one thousand one hundred of the booklets without such request, was a mere gratuity on its part as it was under no obligation to do so until requested. It was not of the consideration until defendant had performed by requesting the same.

Now, as to the eighteen-by-eight full glass display. By reference to subdivision *d* of the same paragraph, the covenant of the defendant will be found in the following words: "d. To send display as often during the year as the retail dealer may reasonably request. Special designs to be arranged each time, one a month, eighteen-by-eight, full glass." We do not understand from this that the company agreed to send an eighteen-by-eight glass display unless the defendant indicated that he desired it and could or would use it. Paragraph 3 of the contract declares the object of the agency to be for the mutual benefit of the parties in thoroughly establishing the sale of the tablets. Now, in construing this contract, with this object in view, we must bear in mind that the company, far removed from the site of the contemplated sales to be had in the future, could illy judge of the amount and character of advertising adapted to that locality. That matter was more peculiarly within the purview of the defendant, depended largely upon his judgment, and therefore it was incumbent upon him, occupying the situs of the business, to be established, to display and distribute the advertising matter, and incumbent upon the plaintiff to furnish such of the char-

acter and not exceeding the quantity mentioned, as in the judgment of the defendant he could employ to advantage. Under these circumstances, why should plaintiff voluntarily ship to him the eighteen-by-eight display when it had no request therefor from defendant, nor an assurance that he could or would give it a place in his store or show-window? It was a matter for the defendant to pass judgment upon as to whether he would use such display in his store or windows to the exclusion of other advertising matter which he no doubt had therein, and if he desired it, he had but to request it and the obligation of the company to furnish would immediately thereby arise. The window displays were to be furnished as often through the year as defendant might reasonably request, and "special designs to be arranged each time, one a month, eighteen-by-eight, full glass." The words last above quoted must be read and construed in connection with those next preceding, and so read, they clearly indicate that each time defendant requested a supply of the window displays, an eighteen-by-eight full glass special design would be arranged and forwarded, not to exceed once a month. By the next following clause in the contract, the company agrees to "furnish the retail dealer, free of expense, all samples for distribution purposes *upon request.*" And so it is seen that in every instance the company agrees to furnish the advertising matter, whether it be booklets, displays or samples, *upon request.* The court is therefore of the opinion that the learned trial judge properly construed the contract when he instructed the jury that it was the duty of the defendant to advise plaintiff whenever additional advertising matter might be required by him. There was no failure of consideration here until defendant had performed.

2. At the instance of plaintiff, the court instructed as follows:

"9. The court instructs the jury that even though

you do believe from the evidence that the advertising matter sent defendant was worthless, still that fact does not justify you in finding against the plaintiff on the acceptance sued upon."

It is insisted that this instruction was erroneous. It is true that ordinarily, where an article is sold or furnished under a contract of this nature, for a specific purpose, communicated between the parties and understood at the time, and the purchaser has not had the opportunity to inspect the article purchased or contracted for, there is an implied warranty on the part of the vendor that it will be reasonably fit for the purpose intended. [Lee v. Sickles Saddlery Co., 38 Mo. App. 201; 15 Amer. and Eng. Ency. Law (2 Ed.), 1231; Benjamin on Sales (6 Ed.), sec. 661.] Appellant invokes this rule of law and argues that the court erred in instructing the jury that even though the advertising matter furnished defendant was worthless, that fact would not justify the finding in his favor on the acceptance. The principle invoked can have no application here, for the reason that the facts do not bring the case within its influence, inasmuch as there was no obligation upon plaintiff to furnish any of the advertising matter until requested to do so by the defendant, and no request was ever made. This is not a case where defendant had either purchased or contracted for advertising matter unconditionally, in which case there would have been consideration and an absolute obligation on the part of the plaintiff to furnish and an implied warranty that the advertising matter so furnished was reasonably fit for the purpose as above indicated, but it is a case where the defendant has contracted for the matter upon the condition that he request it, the obligation was imposed upon plaintiff to furnish the same only upon the condition that defendant made the request and until the defendant had performed the precedent condition on his part, by requesting, there was an absence of the entire consideration for plaintiff's

promise and therefore no obligation rested upon plaintiff to furnish the advertising matter, either sufficient or insufficient. Now, it is clear that if defendant had requested no advertising matter whatever, and he did not, and the plaintiff, awaiting the request, had furnished none, in a suit on the acceptance, defendant could not successfully plead failure of consideration, predicated upon the failure of the plaintiff to furnish this advertising matter for the reason that he had failed to perform a portion of the consideration on his part which was precedent and therefore no obligation was imposed upon the plaintiff to act until he had performed by requesting it to do so. This being true, defendant is precluded as well in the absence of a request by him for such matter, from successfully pleading failure of consideration predicated upon the insufficiency of the advertising matter furnished when none had been requested. For these reasons we are of opinion that the defendant, having failed to request sufficient advertising matter, the fact that the defendant voluntarily furnished him insufficient advertising or that of little value, is wholly immaterial, and the instruction, under these circumstances, was not error.

Without prolonging the opinion, what has been said sufficiently meets the other propositions advanced for a reversal. The judgment will be affirmed. It is so ordered. *Bland, P. J.,* and *Goode, J.,* concur.