## NATIONAL COTTON OIL COMPANY v. YOUNG.

Opinion delivered February 4, 1905.

1. VERDICT—EFFECT.—In an action against a manufacturer of feed stuff to recover for damages to cattle occasioned by his having allowed foreign substances to be mixed therewith, the court submitted the case to the jury upon two propositions: (1) whether defendant was negligent, and (2) whether there was an implied warranty of fitness. The jury found generally for the plaintiff, but found specially that the foreign matter was incorporated in the feed by accident, and not by the negligence of defendant. *Held,* that the verdict eliminated the question of negligence. (Page 147.)

2. SAME—IMPLIED WARRANTY.—The rule that when a manufacturer offers his goods for sale without an opportunity of inspection before the sale, the vendee necessarily relies upon the manufacturer's knowledge, and the law implies a warranty that the articles are merchantable, has no application to the case where the buyer had as good opportunity to inspect the articles as the manufacturer. (Page 147.)

3. SAME—WARRANTY AS TO FEED.—The implied warranty that goods intended for food are wholesome is not extended to feedstuff for cattle. (Page 148.)

Appeal from Miller Circuit Court.

JOEL D. CONWAY, Judge.

Reversed.

STATEMENT BY THE COURT.

J. E. Young sued the Oil Company for the value of two cows, alleging that they had died from eating feedstuffs purchased by him of the Oil Company.

The evidence showed that he had bought a load of cotton seed hulls and a sack of cotton seed meal from the Oil Company, and had loaded the hulls into his wagon himself with a large fork, direct from the factory. He mixed the meal with the hulls, and fed the mixture to his cows, and they died shortly afterward. An examination of one of them disclosed nails, pieces of wire and other foreign substances in the throat and stomach. The meal and hulls were then examined, and similar metallic substances were found in both. The Oil Company was a manufacturer of cotton seed oil and the by-products of cotton seed, among others, hulls and meal, which were used for cattle feed, and sold for that purpose, and known to have been intended for that use by Young when he purchased. The products were manufactured and for sale when Young came to the mill and bought. Evidence was adduced by the Oil Company tending to prove that it was impossible for such foreign substances as found in these articles to have got into them during the process of manufacture, and necessarily that such substances got into the meal and hulls after they were manufactured. There was some evidence tending to show that there was negligence in the putting up for sale of the hulls and meal, and from which the jury might have inferred that the foreign articles got into the feedstuff from the negligence of the employees of the Oil Company.

The court gave this direction to the jury: "The jury will, in the event they find for the plaintiff, please state in their verdict whether the foreign matter alleged to have been in the hulls and meal was incorporated herein by any negligence of the defendants or its servants or by accident." The jury responded: "We, the jury, find for the plaintiff, J. E. Young, the sum of one hundred dollars ($100), and believe the foreign matter got into the feed by accident."

The defendant prayed for judgment on the verdict, but the court rendered judgment on it for the plaintiff, and the defendant (the Oil Company) appealed.

*Scott & Head,* for appellant.

The rule of *caveat emptor* applies, under the common law, to sales of chattels; and there is no implied warranty as to quality or soundness. 14 Ark. 21; 45 Ark. 285; 1 Sm. Lead. Cas. 242.

The exception to this rule is that, when a manufacturer contracts to make and sell goods or to perform and deliver work fit for a certain designated purpose, and no opportunity of inspection is given to the buyer, a warranty is implied that the work or articles shall be adapted to the ends designated.   53 Ark. 155; 26 Kan. 94.   So, where goods are sold by sample, there is an implied warranty that they shall conform to the sample.   4 Kan. 276; 20 *Id.* 204.   But the first-mentioned exception is limited to cases where there is an agreement for the manufacture and sale of some special article, and does not extend to cases where a purchase is made of a complete and existing chattel.   Br. Leg. Max, 614; 3 Blackf. 317; 24 Vt. 114; 1 Sm. Lead. Cas. 250; 11 Oh. St. 48; 68 Pa. St. 149; 4 Gilm. 69; Kerr, Sales, 106; Benj. Sales, § § 644 *et seq.*   That in this case no warranty of quality was implied, see 26 Kan. 94.   Where provisions are sold by one dealer to another for purposes of re-sale and not for immediate consumption, no warranty of wholesomeness will be implied.   1 Den. 378; 18 Wend. 428; 21 Minn. 70; 10 Mass. 197; s. c. 6 Am. Dec. 117; 12 Johns, 457; 18 Mich. 51; Benj. Sales, § § 670-1. Bran is a secondary or refuse product in the manufacture of flour, and the parties to its sale deal with knowledge that it is refuse, and without any warranty, express or implied, as to its quality.   53 Barb. 590; 6 L. T. (N. S.) 690.   Appellant was not negligent, and no liability is entailed on it by the accidental introduction of foreign substances into the bran.   27 Kan. 664, s. c. 41 Am. Rep. 429.   The court erred in its first instruction.   18 Wend. 449; 145 Mass. 430.

*A. A. Foster* and *Webber & Webber,* for appellee.

The jury, under proper instructions, has found that appellant was negligent, and its liability is thereby fixed.   The case in 27 Kan. 664 does not negative this conclusion, but rather sustains it.   A manufacturer, selling foodstuffs for domestic use, knowing the purpose for which same is intended and selling it for that purpose, impliedly warrants that it is fit for such use. 48 Ark. 325; 53 Ark. 160; 2 Suth. Dam. 409; 38 Vt. 432, s. c. 91 Am. Dec. 364; 73 Am. Dec. 154.   Upon the question of implied warranty, see in general also:   102 Mass. 132, s. c. 3 Am. Rep.

440; 22 L. R. A. 193; 110 U. S. 108, s. c. 28 Lawy. Ed. 89; 151 N. Y. 482, s. c. 37 L. R. A. 799.

*Scott & Head,* for appellant in reply.

The finding of the jury that the foreign substances got into the bran "by accident" is not tantamount to a finding of negligence by appellant.   21 S. W. 214.

HILL, C. J., (after stating the facts.)   The case was submitted to the jury upon two propositions, one for negligence in allowing the foreign substances to get mixed with the feedstuff, and the other an implied warranty of the soundness and fitness for the purpose intended.

The judgment might well be sustained upon the evidence, had it been for the plaintiff upon the issue of negligence alone. *French* v. *Vining,* 102 Mass. 132, s. c. 3 Am. Rep. 440, is a direct authority to sustain such an action.   But the special finding that there was no negligence, and that the foreign matter got into the feedstuff by accident, eliminates that question from this case.

It is contended that the special finding does not amount to anything more than a finding that the foreign matter was incorporated by accident, as contradistinguished from design.   The position is not tenable, in view of the plain direction to find negligence or accident, and the finding of accident necessarily finds there was no negligence.   A similar conclusion on a strikingly similar use of the words "accident" and "negligence" was reached in *Henry* v. *Grand Ave. Ry. Co.,* 21 S. W. Rep. 214.

This case, therefore, depends entirely upon whether there was an implied warranty that the feedstuff was reasonably fit for the purpose intended.   This court recently dealt with one of the implied warranties of a manufacturer, and said:   "When a manufacturer offers his goods for sale, where the opportunity of inspection is not present before the purchase, the vendee necessarily relies on his knowledge of his own manufacture.   In such cases the law implies a warranty that the articles shall be merchantable and reasonably fit for the purpose for which it was intended." *Main* v. *Dearing,* 73 Ark. 470.   This rule is invoked here.   It is inapplicable.   This is not a case where the opportunity

of inspection is not present, and where the vendee necessarily relies on the knowledge of the manufacturer. Here the discovery of the foreign substance was equally open to the buyer as to the seller; in fact, more so to the buyer, as he loaded the hulls with a fork into his wagon, and mixed small quantities of meal from the sack into the hulls at each feeding.

The warranty of the merchantable character of the articles only extends to executory contracts, because the goods cannot then be selected or inspected; hence the rule of *caveat emptor* cannot apply, and the warranty is implied. 2 Mechem on Sales, § § 1340, 1341, 1349. Mr. Benjamin, in his work on Sales, says that the implied warranty of the fitness of goods for the use intended does not apply where the manufacturer becomes a dealer; or where a known, described and defined article is ordered of the manufacturer, and he furnishes such article, there is no implied warranty of its quality; but that it does apply where an opportunity for inspection is not present, or where reliance is placed on the judgment and skill of the manufacturer. Benjamin on Sales, § 658. These rules all accord with *Main* v. *Dearing, supra,* and the previous decisions of this court therein cited, and do not extend the warranty to the case at bar.

The implied warranty is sought to be upheld on the warranty of feedstuffs. Blackstone says there is an implied warranty that goods intended for food are wholesome. 3 Blackst. Com. p. 165. It is usually stated that the goods are wholesome and fit for human food. 2 Mechem on Sales, § 1356. The implied warranty is sometimes denied, and the rule, where enforced, has many limitations. For full statement of it and its limitations, see Benjamin on Sales, pp. 691, 693; Mechem on Sales, § 1356 *et seq.* The implied warranty in such case is an exception to the common-law rule of *caveat emptor,* and is sustained upon principles of public policy requiring dealers in food intended for human use to examine it and see that nothing deleterious to life or health is found therein. This exception is not extended to feedstuff for cattle. *Lukens* v. *Freund,* 27 Kan. 664, s. c. 41 Am. Rep. 429. This case is almost a counterpart of the case at bar. It was an action for the value of a cow whose death was caused by metallic substances in bran purchased of a miller, bran

being one of the by-products of the mill. The questions of liability for negligence in allowing the metal to get in the bran, the duty of a manufacturer and dealer, and whether the warranty of feedstuff applies to cattle feed, were all presented, and decided as herein. The case is well reasoned and supported by authorities therein reviewed, and the opinion delivered by that eminent jurist, Mr. Justice DAVID J. BREWER.

The judgment is reversed, and judgment entered here on the special finding of the jury in favor of the appellant.

Mr. Justice RIDDICK dissents.