## WILLIAM E. ROBINSON ET AL
### *vs.*
## BARTELDES SEED COMPANY.

*Invalid Arbitration Clause—Insertion in Declaration—Sale of Seed Corn—Implied Warranty of Fitness—Evidence.*

A count in the declaration, otherwise good, was not rendered bad by the insertion therein of an invalid arbitration clause of the contract in suit, coupled with an allegation that no claim was made within the time named for arbitration, no allusion being made to such clause in the trial of the cause.

pp. 492, 493

Where, on the sale of corn to a purchaser at a distant point, it was known to the vendor that the corn was bought for seed purposes, and the purchaser relied on the seller to furnish corn reasonably fit for such purposes, no samples being furnished at the time of sale, it was a sale by description, and there was, under Code, art. 83, sec. 36, subsecs. 1, 2, an implied warranty that the seed was of merchantable quality and reasonably fit for seed purposes. pp. 494, 495

A statement, by the vendor of seed corn to the purchaser, that samples of the corn "tested for us between 75 and 80 per cent. and this is as good corn as we can get this year. Most of the corn germinates from 0 to 50 per cent.," did not justify any consideration by the jury, in determining whether the corn sold was reasonably fit for seed, of the statement as to the germinating power of "most of the corn," or of evidence as to the low germinating power of the crop of the preceding year. p. 496

On an issue as to the fitness for seed of corn sold, witnesses who had had experience in the growing, purchase, and sale of seed corn could properly testify as to what was the proper per cent. of germination test for seed corn. p. 497

On an issue as to the fitness for seed of corn sold, evidence as to the result of germination tests of samples of such corn, made at the laboratories of the State agricultural college, was admissible. p. 497

*Decided November 30th, 1921.*

Appeal from the Circuit Court for Harford County (HARLAN, J.).

Action by the Barteldes Seed Company against William E. Robinson and Alphonso P. Robinson, trading as W. E. Robinson Company. From a judgment for plaintiff, defendants appeal. Reversed.

The third, sixth, tenth, eleventh, twelfth and thirteenth exceptions involved rulings upon questions asked of witnesses who had had considerable experience in the growing, sale and purchase of seed corn, as to the proper per cent of germination test for such corn. The fourteenth and fifteenth exceptions involved rulings excluding evidence as to the result of germination tests of samples of the corn sold by plaintiff to defendant, made at the laboratories of the State Agricultural College.

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, PATTISON, URNER, STOCKBRIDGE, ADKINS, and OFFUTT, JJ.

*Thomas H. Robinson,* for the appellants.

*Harry S. Carver,* with whom was *W. Worthington Hopkins* on the brief, for the appellee.

PATTISON, J., delivered the opinion of the Court.

The appeal in this case is from a judgment recovered by the appellee, The Barteldes Seed Company, a corporation of Colorado, doing business in the State of Kansas, against the appellants, William E. Robinson and Alphonso P. Robinson, partners trading as W. E. Robinson & Company, dealers in seed corn and other seed in Bel Air, Maryland.

A circular, issued by the appellee on the 27th day of December, 1917, offering for sale several varieties of seeds, and containing an item of "thirty thousand pounds of Sto-

well's Evergreen at 18c per pound," came to the notice of the appellants, and on December 31st of the same year the appellants wired the appellee:

"Accept thirty thousand pounds Stowell's Evergreen, offer circular twenty-seventh. Wire confirmation. What is germination test?"

On the same day, December 31st, the appellee both wired and wrote appellants in reply to said telegram. The appellee in its telegram stated: "Booked order. Corn not in yet. Samples tested seventy-five to eighty per cent."

The letter written by it at the same time is as follows:

"We have your message accepting 30,000 pounds of Stowell's Evergreen at 18c. per pound, f. o. b. Lawrence, bags extra. We have wired you our acceptance and booked order. This corn is country run and will be recleaned on our cleaners, but will not be hand-picked. The samples tested for us between 75 and 80, and this is as good corn as we can get this year. Most of the corn germinates from 0 to 50 per cent. As soon as this corn has been milled and is ready for shipment we will mail you samples, so you can see what we are shipping. We may be able to offer some more of this corn later on."

The president of the appellee company, when asked by his counsel if he received "a confirmation of the telegraphic order from W. E. Robinson & Company," stated that he did and, when requested, produced the following letter:

"Bel Air, Md., Jan. 3rd, 1918.

"(All quotations subject to our confirmation.)

"Messrs. Barteldes Seed Co., Lawrence, Kansas.

"Gentlemen:

"Have wired you as follows:

"'Accept thirty thousand pounds Stowell's Evergreen, offered circular twenty-seventh. Wire confirmation. What is germination test?'

"Have your acceptance as follows:

" 'Booked order.  Corn not in yet.  Samples tested seventy-five to eighty per cent.'

"And enclosed contract.  Please send us samples of this seed corn and hold subject to our order.

"Yours very truly,

"W. E. Robinson & Company."

The contract enclosed in the letter was as follows:

"Bel Air, Md., Jan. 3rd, 1918.

"Sold to W. E. Robinson & Company, Bel Air, Maryland, for account of Barteldes Seed Co., Lawrence, Kansas, 30,000 lbs. Stowell's Evergreen Seed Corn at 18c. per lb.

"Terms:

"Delivered f. o. b. Lawrence, Kansas.

"Shipment: As ordered out; await shipping instructions.

"APR—B.       W. E. Robinson & Co., Brokers."

In answer to the appellee's letter, the appellants on January 5th wrote the appellee, saying:

"We have yours of the 31st.  Just as soon as the corn is ready for shipment please advise us.  Please send as large a sample as possible, as we can sell from it."

The appellants, with the view of buying more seed corn of the appellee, wired it on the 24th day of January, 1918, saying:

"Wire full list of all sugar corn can offer and germination test."

The appellee on the same day replied thereto saying:

"Have unsold two hundred bushels each Bantam and Stowell's at twenty-five."

To this telegram, the appellants, on January 25th, wired the appellee: "Accept two hundred bushels Stowell's," and at the same time wrote it the following letter:

"We have your wire reading as follows: 'Have unsold two hundred bushels each Bantam and Stowell's at twenty-five.' Have wired you as follows: 'Accept two hundred bushels Stowell's,' and herewith confirm and enclose contract."

The enclosed contract was as follows:

Bel Air, Md., Jan. 25, 1918.

"Sold to W. E. Robinson & Co., Bel Air, Md., for shipment of Barteldes Seed Compnay, Lawrence, Kansas, 200 bushels Stowell's Evergreen Seed Corn, at $25.00 per hundred.

"Delivered: F. o. b. Lawrence, Kansas.

"Shipment: As ordered out; await instructions.

"Terms: Cash.

\*          \*          \*          \*

"Examination: Buyers shall have no right to claim or to be entitled to arbitration for any cause, unless claim is made for, or arbitration demanded within three full business days after arrival, and if goods are subject to buyer's privilege of examination, contract shall then be considered fully complied with on seller's part.

\*          \*          \*          \*

"Disputes: All disputes under this contract shall be arbitrated in the usual manner, and the decision of the arbitrators shall be final, cost of arbitration to be paid by the loser. \* \* \*

"Seller's copy (duplicate sent to buyer).

"W. E. Robinson & Co., Brokers."

The appellee answered the appellants' telegram January 25th, both by telegram and letter of the same date. In the telegram, the appellee stated:

"Booked your order for two hundred bushels Stowell's at twenty-five cents per lb. f. o. b. Lawrence, bags extra. Net cash."

And in its letter, the appellee said:

"After exchange of messages we have booked your order for two hundred bushels of Stowell's Evergreen Sweet Corn at 25c. per lb. f. o. b. Lawrence, bags extra. Terms, net cash. We prefer to ship the seed to you in one lot, but if we have to fill your orders, of course, we will do so, but we want to ship in our own name and make sight draft with bill of lading. For all Canadian shipments we have to have a license from the government in Washington, and we would have to know what price to charge these Canadian parties, otherwise cannot ship."

The appellee's letter of January 25th does not appear from the record to have been answered, but on the 26th day of January, the day following the date of said letter and evidently before the receipt of it by the appellants, the appellants again wrote the appellee saying:

"We have your wire reading as follows: 'Booked your order for two hundred bushels Stowell's at 25c. per lb., f. o. b. Lawrence, bags extra. Net cash.' We have already sent you contract.

"Please send us sample of this corn, and also advise what the germination test is."

This letter also was not answered.

Shortly after the close of the negotiations, resulting in the sale of the thirty thousand pounds of corn by the appellee to the appellants, the latter from time to time, so early as the 16th day of January, 1918, sent to the former orders to ship to purchasers of the appellants, located in Canada and throughout this country, the quantities of corn named in said orders.

The corn was shipped as ordered, and in some instances it was received and paid for, but in others it was rejected, because, as alleged, defective in its germinating powers. As a result thereof the corn was thrown upon the hands of the appellants, and when tested at their instance it was found to

germinate not more than from 40 to 55 per cent., which not
only showed a germinating power far less than that named in
the first contract of sale, but it also showed, as contended for
by the appellants, that the corn was unfit for the purposes for
which it had been bought by them.

It was then that the appellants asked to be permitted to
return the corn to the appellee, that it might put it in a condi-
tion by which its powers of germination would be strength-
ened to meet the test mentioned in the first contract of sale,
and to render it fit for seed purposes, but the appellee refused
to comply with their request, and no more of the corn was
thereafter ordered out by the appellants.

The corn remaining in the hands of the appellee, that had
not been ordered out by the appellants, was sold or disposed
of by the appellee, at a loss to it, as it alleges. It was to
recover that loss that this suit was instituted. To the eighth
or last count, a demurrer was filed, but overruled. This
count was based upon the second contract made, the one for
the sale of two hundred bushels of corn, which contained a
provision submitting all disputes arising under it to arbitra-
tion when demanded by the buyer within three full business
days after the arrival of goods, and that a decision there-
under should be final. This provision of the contract, with
others, was set out in said count of the declaration, and with
it an allegation that no claim was made or arbitration de-
manded by the defendants within three full business days
after the arrival of the corn. It is contended by the appel-
lants that this count of the declaration is bad because of the
insertion in it of said provision and allegation in respect
thereto, claiming that under the law such provision of the con-
tract, which sought to oust the court of its jurisdiction, was
invalid and without force and meaning. Should we concede
the correctness of this contention, this count of the declara-
tion, otherwise good, would not be bad because of the inser-
tion in it of said provision of the contract, and the allegation
in reference thereto. The only object the plaintiff could have

had, in inserting the same in the declaration, was to show that, notwithstanding the existence of such provision in the contract, it was not availed of within the time mentioned therein, and consequently the plaintiff was not prevented thereby from pursuing his remedy in a court of law. If the defendants are correct in their contention that it was invalid and thus ineffective for the reason assigned by them, it was, of course, unnecessary that the plaintiff should have alluded to it in showing that it was ineffective because of the reason stated by it, but we fail to see in what way such insertion in the declaration injured the defendants, especially in view of the fact that no allusion was thereafter made to said provision of the contract in the trial of the case.

The defendants pleaded the general issue and two pleas of set off, one alleging a breach of the same contract by the plaintiff, in that the corn delivered to the defendants' customers, which was rejected by them would not stand a germination test high enough to be marketable, and further alleging that, because of such fact, the defendants took no more of said corn, and cancelled their contract with the plaintiff, and that, by reason of the failure of the plaintiff to carry out and perform its contract, they were compelled to go into the market, which had greatly advanced, and purchase Stowell's Evergreen Seed Corn of a marketable quality to furnish their customers, and in so doing, they were greatly damaged and suffered great loss and injury.

In the trial of the case seventeen exceptions were taken to the rulings of the court upon the admission or rejection of evidence, and one to the rulings of the court upon the prayers.

We will first consider the seventeenth exception, which relates to the rulings upon the prayers. The plaintiff offered six prayers. Of these, the first, second, third and fourth were granted after modification by the court, the sixth was granted as offered, and the fifth was refused.

The defendants offered seven prayers, all of which were refused; and the court granted a prayer of its own motion, which is designated in the record as the "court's prayer."

The court, by the plaintiff's sixth prayer, instructed the jury that the sales of corn mentioned in the contracts were sales by description.

This conclusion, we think, was warranted from the terms and provisions of the contracts between the parties, which are so fully set out in the correspondence between them.

It is provided in sub-section 1 of section 36 of article 83 of the Code that,

"Where the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be reasonably fit for such purpose."

And in sub-section 2 of said section 36 of article 83 of the Code it is also provided,

"Where the goods are bought by description from a seller who deals in goods of that description (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be of merchantable quality."

The corn sold under the first contract, consisting of thirty thousand pounds, is described as "Stowell's Evergreen" with a germination test of 75 to 80 per cent.

The two hundred bushels, or nine thousand pounds, of corn sold under the second contract, is also described as "Stowell's Evergreen," but the record does not disclose, so far as we have been able to ascertain, that, at the time of the sale, any representation was made as to its powers of germination, although it developed in the trial of the case that the corn sold thereunder was taken from the same pile or lot as that from which the corn sold under the first contract was taken, which

as we have stated, was said to test 75 to 80 per cent. It was, however, known to the appellee that the corn was bought to be used for seed purposes, and the appellants relied upon the appellee to furnish them under said sale corn reasonably fit for such purposes.

No samples were furnished at the time of either of these sales. At the time of the first, if not at the time of the second, sale, the corn had not been delivered to the appellee by the party from whom it had bought. At such time the appellee had only the sample of it. This was known to the appellants, but they were told that, when the corn was received, they would be furnished with a sample or samples taken from the corn at such time, in order that they might see the quality of the corn that was being shipped by the appellee, upon their order, to their customers. The contracting parties were many miles apart when negotiating for the purchase and sale of the corn, and the appellants had no opportunity to ascertain its quality or to make tests as to its powers of germination, but they relied upon the appellee, under the sale so made, to furnish them corn, as described in the said contract, of a merchantable quality and reasonably fit for the purpose for which it was intended.

The court, by the plaintiff's first prayer, which related solely to the first purchase of corn, instructed the jury that, should they find the facts therein mentioned, they should find for the plaintiff, "provided the jury is satisfied from the evidence that the corn so sold to the defendants by the plaintiff was reasonably suitable for seed, taking into consideration the character of the preceding crop season as described by the witnesses and the plaintiff's letter to the defendants under date of December 31, 1917."

The objection urged against this prayer is the direction to the jury that they should take "into consideration the character of the preceding crop season as described by the witnesses and the plaintiff's letter to the defendants under date of December 31, 1917."

The letter referred to contained the statement that "the samples" of the corn involved in the first purchase, which at the time of its sale to the defendants had not been delivered to the plaintiff, "tested for us between 75 and 80 per cent. *and this is as good corn as we can get this year. Most of the corn germinates from 0 to 50 per cent."

By this instruction the jury were told that, in determining whether the corn was "reasonably suited for seed" they should take into consideration the expression used in the letter, that most of the corn for that year germinated from 0 to 50 per cent., and should also take into consideration the evidence offered by the plaintiff as to the low germinating power of the corn crop of the preceding year. The learned judge, we think, erred in so instructing the jury. The corn that was bought by the defendants of the plaintiff was described by the seller as testing between 75 and 80 per cent. The defendants were not buying corn that the plaintiff referred to in its letter as germinating only from 0 to 50 per cent. The reference made by the seller that most of the corn of that year was germinating between 0 and 50 per cent. was not descriptive of the corn it was selling to the defendant, but was said, as it would seem, in explaining why the corn sold to the defendants tested no more than 75 to 80 per cent., for it goes on to say that the corn sold them of that test was as good as it could get that year.

The second prayer of the plaintiff relates only to the sale made under the second contract, with which the letter had no connection, and for such reason, if for no other, this prayer should have been refused.

The error pointed out in the plaintiff's first prayer is found in its third prayer and also in the prayer known as the "court's prayer."

The defendants' first prayer, asking that the case be taken from the jury for want of legally sufficient evidence, was, we think, properly refused; and upon the facts of the case we discover no error in the court's rulings upon the defendants' second and third prayers.

The defendants' fourth prayer, which relates to corn sold under both contracts, and which was refused by the court, submits to the finding of the jury the question whether the corn was represented by the plaintiff to germinate from "75 to 85 per cent.," when so far as we have been able to discover there is no evidence in the record that the corn sold under either of the contracts was said to germinate from 75 to *85* per cent. In the first sale it was stated that its germinating test was from 75 to 80, not 75 to *85*; and in the second sale we find no representation whatever as to its germinating test.

But the fifth, sixth and seventh prayers of the defendants, we think, should have been granted, as they, in our opinion, correctly stated the law applicable to the facts of this case.

Of the seventeen exceptions to the admissibility of evidence, the defendants' counsel in his brief discusses only the third, sixth, tenth, eleventh, twelfth, thirteenth, fourteenth and fifteenth, all of which relate to the admissibility of evidence offered as to the merchantable quality and the reasonable fitness of the corn for seed, that being the purpose for which it was purchased.

This was an important question in the trial of the case, upon the issues joined, and evidence as to same, when offered through witnesses qualified to testify thereto, should have been admitted. The other exceptions that were not, as we have said, discussed in his brief by the counsel for the defendants, have been carefully examined by us and, without referring specifically to each of them, we will state that, so far as we have been able to discover, we find no reversible error in any of them.

Because of the above mentioned errors in the rulings of the court below, the judgment in this case will be reversed.

> *Judgment reversed and new trial awarded, the appellee to pay the costs.*