[No. 18310.  Department One.  March 19, 1924.]

MAGNOLIA MILLING COMPANY, *Appellant,* v. MORTON
CLARK *et al., Respondents.*[1]

SALES  (164-1)—WARRANTY — BREACH — EVIDENCE — SUFFICIENCY.
Upon an issue as to a warranty of chicken feed sold to defendant,
the jury's finding that defendant's loss of chickens and depreciation
of egg production was due to an excess of fatty acid in the food
must be set aside as founded on speculation and conjecture, when
supported only by the testimony of a witness, describing himself as
a feed specialist, that he was prejudiced against meal containing
more than five per cent free fatty acid.

Appeal from a judgment of the superior court for
King county, Clifford, J., entered June 16, 1923, upon
the verdict of a jury rendered in favor of the defend-
ants, in an action on contract.  Reversed.

*Warren H. Lewis* and *William Welch,* for appellant.
*Poe, Falknor, Falknor & Emory* and *E. C. Million,*
for respondents.

TOLMAN, J.—Appellant is a corporation engaged in
the retail feed business in the city of Seattle.  It
brought this action, as plaintiff, to recover from re-
spondents, as defendants, for the value of certain
chicken feed sold and delivered to them.  After making
certain admissions and denials, respondents, by af-
firmative answer and cross-complaint, pleaded that
they were engaged in the business of raising poultry
and eggs for the market, kept approximately 2,700
chickens, and used largely prepared chicken feed in
order to get the best results; that, at the time of the
purchase of this particular feed from the plaintiff, it
knew the purpose and use to which the feed would
be put, and represented and warranted the feed to be

[1]Reported in 223 Pac. 1042.

fit and suitable for that purpose; that the feed contained 60 per cent of protein, while in fact such feed contained not to exceed 45 per cent of protein, the deficiency of protein lessening the value of the feed more than fifty per cent. It is further alleged that any meat meal which contains free fatty acid in the fat in excess of five per cent is deleterious and harmful, and that the meat meal purchased from the plaintiff contained 12.35 per cent of meat fat, which fat contained free fatty acid to the amount of 21.7 per cent thereof; that, by reason of that fact, the meat meal was unfit for feeding and resulted in depreciating the egg production of the defendants' flock to one-fifth of what it otherwise would have been; that the meat meal was sold and delivered in sacks, on each of which was printed a guaranteed chemical analysis of the contents over the manufacturer's name and address, which analysis was,

Protein .................. 60%
Phosphates .............. 10%
Fat ..................... 10%
Fiber ................... 2%

That there was nothing in the appearance of the meat meal to indicate that it was not fit for the purpose intended and for which the defendants used it; that it was sold under an implied guaranty of fitness and was used, and its use caused the defendants' poultry to become unhealthy, occasioned the death of some, and reduced the egg production to one-fifth of the usual and ordinary production, to their damage in the sum of $5,000.

A trial to a jury resulted in a verdict in favor of the defendants, "We the jury in the above entitled cause do find for the defendants in the sum of $1,821.74 for feed bill, and $1,500 damages," which the trial court

construed as a finding against the plaintiff on its cause
of action, and in favor of the defendants on their cross-
complaint for $1,500 in excess of plaintiff's demands,
and entered judgment thereon to the effect that plain-
tiff take nothing, and that defendants recover $1,500
and costs. From this judgment, the plaintiff has ap-
pealed.

Many interesting questions of law are exhaustively
briefed and presented—as to whether there was a
warranty at all, and, if so, whether it was an expressed
or an implied warranty, and the like. But, after a
careful reading, word by word and line by line, of a
very extensive record in the attempt to find evidence
upon which the verdict can be upheld, we are abund-
antly convinced that, in any view of the law of war-
ranty, there is no such evidence, and that no reason-
able inference can be drawn from the evidence offered
which will support the verdict.

The vital allegations of the cross-complaint are
those which charge that an excess of free fatty acid in
meat meal is deleterious to poultry; that the meal in
question contained such excess; and when fed caused
the damage complained of. It is impracticable to set
out or to discuss in detail the evidence relied upon to
sustain these allegations, but briefly as to the meal
containing an excess of free fatty acid, no one knows
or pretends to say that five per cent, or any other per
cent, of free fatty acid in the meal, or five per cent or
any other percentage of free fatty acid in the fat con-
tained in the meal actually makes the meal unwhole-
some or dangerous. The nearest approach to testi-
mony to this effect is that of a witness describing him-
self as a feed specialist, who testified to what was no
more than a prejudice on his part against meal con-
taining more than five per cent of free fatty acid, and

he so little understood his subject that he did not and could not distinguish between five per cent of free fatty acid in the meal and five per cent of free fatty acid in the fat contained in the meal, though closely pressed by counsel upon both sides, and while at the worst the meal in question contained no more than 2.68 per cent of such acid, the witness, though condemning this meal, freely said and repeated that any meal containing not more than five per cent of the acid was all right for feed, though he preferred and was then recommending and selling meal containing 2½ per cent of free fatty acid, practically the same as the meal now complained of.

Substantially all of the witnesses agree that, while free fatty acid is released by putrefaction, it is also released by other agencies when there is no putrefaction present, and that it is and must be released in the process of digestion. It is also agreed that the whole subject is a new one; that it has not been customary to analyze feeds for the presence of this acid; that there are no state or governmental regulations upon the subject, and that science has not yet classified free fatty acid as dangerous or to be guarded against, or attempted to say what percentage may be considered as making the feed or food in which it is found unwholesome.

That the feeding of the meal caused the conditions of which complaint is made has even less semblance of support. No one attempted to say that, in his opinion, this particular feed was the cause of the condition said to have been found upon post mortem examination of the chickens which died, or that free fatty acid was ever known to cause like conditions. Counsel for respondents asserted in their brief and in oral argument that this point had been proven by the process of eliminating all other causes. True, there

was testimony that the stock was carefully selected; that the chickens were well cared for, free from vermin and worms, and not afflicted with cholera or chicken pox; but we find no testimony, from either expert or practical sources, from which it can be reasonably inferred that the chickens were not afflicted and their condition caused by some other known disease, or perhaps by a disease heretofore unknown and unnamed, not in either case induced nor aggravated by the feed.

We have viewed the testimony from every standpoint suggested by counsel, and from every other angle of which we can conceive, and yet we are clearly convinced that the verdict of the jury is based upon speculation only. It cannot, therefore, be allowed to stand.

Appellant moved for a nonsuit at the close of the evidence in support of the cross-complaint; for a directed verdict at the close of all of the evidence, and after the verdict, for judgment *non obstante veredicto*. One of these motions should have been granted.

The judgment appealed from is reversed, and respondents having admitted in open court that appellant had furnished to them goods of the agreed value alleged in the complaint, and would be entitled to judgment if they failed to sustain their cross-complaint, a judgment as prayed for in the complaint will be entered.

MAIN, C. J., HOLCOMB, MACKINTOSH, and PARKER, JJ., concur.