JOHN WADE & SONS v. BATESVILLE HOG Co.*

(Division B.    May 25, 1925.)

[104 So. 145.    No. 24854.]

SALES. *No implied warranty of soundness of feed for animals.*

There is no implied warranty of soundness in sale of foodstuff for animals.

---

*Headnote. Sales, 35 Cyc., p. 409; On necessity of description of place to be searched and property to be seized in search warrant, see notes in 3 A. L. R. 1518, 1519; 13 A. L. R. 1318, 27 A. L. R. 751; 754; 24 R. C. L., pp. 712-714; 4 R. C. L. Supp., p. 1553; 5 R. C. L. Supp. 1296.

APPEAL from chancery court, Second District, Panola county.

HON. J. G. McGOWAN, Chancellor.

Suit by the Batesville Hog Company against John Wade & Sons. From the decree, defendants appeal, and plaintiffs cross-appeal. Affirmed on cross-appeal; reversed and judgment rendered on direct appeal.

*Montgomery & McClure,* for appellants.

## I.

The evidence in this case does not show that the appellant made an express warranty with appellees to ship appellees first-grade corn and hog tankage. The only testimony in the whole record which can in any way tend to support an express warranty is that of the appellees, themselves. However, this testimony does not support the allegations in their bill and falls far short of an express warranty. What constitutes an express warranty? See *Kinley* v. *Fitzpatrick,* 4 H. 59, 34 Am. Dec. 108; 35 Cyc. 373; 24 R. C. L. 166, par. 439.

With these cardinal rules of law laid down by our own state and by other states, can it be said that the testimony in the record in the instant case, shows that the appellant ever made a statement in any manner or form, which amounted to an affirmation express or direct, that the corn which he shipped appellees was to be of any affirmed quality. The testimony as set out above from the three complainants in the court below, shows affirmatively, that the representative of this appellant never did in any way, shape or form, make any statement to the appellees that he would ship them corn or hog feed of a certain quality or kind. Their testimony boiled down is to the effect and amounts to nothing more than this, that these appellees stated to the representative of appellant that they were engaged in the business of feeding hogs for the market and desired to buy some good hog feed, the record shows affirmatively, that appellant's representative did not make any representations or affirmations as to the quality or kind of feed that would be shipped to appellants. It is manifest that such testimony cannot amount to an express warranty under the rules of law stated above. This case is squarely in point with *Dunagin-Whitaker Co.* v. *Montgomery,* 117 Miss. 666.

## II.

An express warranty does not cover patent defects. *Anderson* v. *Burnett,* 5 Howard, 161.

## III.

There is no evidence in this record which shows that appellant shipped appellees bad corn which caused twenty hogs of appellees to die which ate same. Not any one of these appellees have stated in their testimony that a single grain of the corn shipped to them was rotten or bad. In fact their whole grievance was that the appellants by a mistake shipped them meat scraps, a preparation used to feed chickens, instead of hog tankage; and that the feeding of this meat scraps to their hogs caused twenty of their hogs to die. We cannot refrain from saying that if this corn was bad as found by the court, these appellees, three in number, who were in court asking for damages for the death of their hogs, on this account, would have certainly stated such facts to be true in this record.

We respectfully state unto the court that if the protein poisoning caused the death of the hogs, then the corn did not. The law requires that damages of this nature must be proved with a reasonable degree of certainty, and that the burden is on the appellees, to show to the satisfaction of the court that the eating of this corn was the proximate cause of the death of these hogs. This cannot be true in this cause for there is no direct positive testimony which says that the hogs died from eating bad corn but on the contrary there is a direct, positive proof that the corn was of a good quality and was fed to a number of hogs without any fatal results.

We respectfully state in conclusion that there is no liability upon this appellant upon any theory of an implied warranty, our own court having expressly held in *Dulaney* v. *Jones & Rogers,* 100 Miss. 835, that an implied warranty for the soundness of food stuff does not extend to or cover any food products which are not intended for human consumption.

Therefore, there can be no recovery in this case, unless it be predicated upon an express warranty, as the evidence and bill of complaint do not in any way show or charge that the appellants were negligent, and knowingly shipped appellees poison feed stuff.

On the express warranty, we state respectfully that the evidence completely fails to establish the same as required by law and for this reason this court should reverse this case and enter judgment in favor of this appellant.

*Lamb & Johnson,* for appellees.

There can be no doubt that the damages sustained in this case were the direct and proximate result of the violation of its contract by the defendant to ship only first grade corn, shorts and tankage. The testimony of Dr. Hock is positive and unequivocal. He stated that either the faulty corn or the meat scraps might have caused the trouble and loss. As both were used it might be impossible to tell which was the primary and which the contributing, if any, cause.

None of the hogs had been sick before or were sick when the use of this feed was commenced. Soon after it was commenced the hogs began to lose weight, were sick and dying. When the use of this unsuitable feed was discontinued no more trouble on account of loss and weight, sickness and death was experienced.

The specification by the complainants as to what they wanted and the acceptance of the order by the salesman on these specifications was relied on by the buyers as a warranty that the goods would be as specified and as ordered.

In *Lumbermen's Supply Co.* v. *Poplarville Saw Mill Co.,* 117 Miss. 274, 78 So. 157, Mr. Justice HOLDEN laid down the rule that where a buyer purchased an endless rubber belt for use in a saw mill there was an implied warranty on the part of the appellant that the belt was

of merchantable quality and suitable for the purpose for which it was to be used.

We respectfully submit that there is very much more reason for holding that the defendant in this case was under the duty and obligation to furnish feed that was suitable for the purpose for which it was intended to be used.

We respectfully insist and submit that in this case there was an express warranty and that the court below was correct in so holding. But even though there was no express warranty we respectfully insist that under the rule announced by Mr. Justice HOLDEN the defendant would be liable for the failure to furnish feed suitable for the purpose for which it was to be used.

In *Rosenbaum's Sons et al.* v. *Davis & Andrews Co.,* 111 Miss. 228, 71 So. 388, Mr. Justice STEVENS speaking for the court laid down the rule that there is an implied warranty of good and merchantable quality where grain is sold to a retail merchant by a wholesaler.

If there is any conflict between the two cases above cited and *Dunagin-Whitaker Co.* v. *Montgomery,* 78 So. 580, we insist that the better and true rule is set forth in the first above-cited case.

The record shows that tankage of first quality was ordered and was invoiced but not shipped. The defendant wholly and utterly failed to ship what it had contracted and agreed to ship but shipped something entirely different and something that was dangerous and hurtful to complainants and which resulted in great damage to them. *Alden* v. *Hart,* 161 Mass. 576; *Murchie* v. *Cornell,* 31 A. S. R. 526.

Where a consequential damage is sustained by reason of the breach of warranty either express or implied or by negligence the injured party is entitled to recover therefor. In an action for breach of warranty as to fitness of boxes to be used for packing merchandise such as tobacco the resulting injury to merchandise has been held recoverable. *Gerst* v. *Jones,* 32 Grat. (Va.) 518; *North Alaska Salmon* v. *Hobbs,* 159 Cal. 380, 35 L. R. A. (N. S.) 501.

It was held in *Northern Supply Co. v. Wangard,* 132 Wis. 1, 107 A. S. R. 984, that where potatoes are sold to a dealer with a warranty as to quality under a contract for "good" potatoes, the seller is chargeable with knowledge that they may be mixed by the dealer with other potatoes and may be held liable for injury to such other potatoes.

This court in *Grafton-Stamps Drug Co.* v. *Williams,* 105 Miss. 296, 62 So. 273, held that the sale of seed by name raised an implied warranty that the seed was true to name; that the measure of damages for a breach thereof was the difference between the value of the crop actually raised and what would ordinarily have been produced if there had been no breach of warranty and the seed had been true to name.

We respectfully ask that the decree of the chancellor in favor of complainants for the value of the hogs that died should be affirmed and that in addition thereto this court should render a decree in favor or complainants for what was lost on account of the loss in weight on the five hundred hogs.

Argued orally by *Jas. McClure,* for appellants.

HOLDEN, P. J., delivered the opinion of the court.

The appellees, Batesville Hog Company, sued the appellants, John Wade & Sons, for seven hundred one dollars and thirty-five cents as damages for the loss of twenty hogs and the shrinkage or loss in weight of other hogs, due to appellants' negligence in shipping inferior corn and chicken feed instead of tankage, which was fed to the hogs, causing them to die, and others to lose weight from alleged ptomaine poisoning caused by the feedstuff. There was a decree in favor of appellees, hog company, for two hundred and fifty dollars, which was for the loss of the dead hogs due to being fed with the inferior corn. The claim for the loss in weight of the other hogs was

disallowed by the chancellor. Wade & Sons appeal directly, and the appellees cross-appeal.

The suit was prosecuted upon the theory that the appellants negligently shipped inferior and unsuitable feedstuff to appellees, which, when fed to the hogs, caused the sickness and deaths complained of. The defense was that there was no express warranty of the purity of the food for the animals, and, second, that the animals were not injured by eating the feedstuff, and that therefore no recovery should be had.

We have carefully examined the testimony in the record which was offered to show that the hogs died as a result of eating the corn and chicken feed shipped by appellants to appellees, and we do not think the evidence is sufficiently definite to establish the fact that the death of the hogs, and the loss of weight in the others, was caused by the use of the foodstuff purchased by appellees from appellants.

The testimony in the latter regard is uncertain and indefinite, and there are many undisputed facts and circumstances in the case which affirmatively show that the damage to the hogs did not flow from the use of the stock food in question, and, this being true, it is our opinion the appellees should not have recovered in any amount.

We find further that the proof in this record does not clearly establish that the corn and chicken feed was of such a bad and defective quality as would be poisonous or injurious when fed to animals; and, moreover, it appears there was no express warranty of soundness of the food, and, in the absence of an express warranty, and as implied warranty does not apply to foodstuff for animals, there could be no liability for injuries resulting from the condition of the food, which was fed by the appellees to the animals claimed to have been injured thereby. *Dunagin-Whitaker Co.* v. *Montgomery,* 117 Miss. 666, 78 So. 580.

For the reasons given above, the decree of the lower court on direct appeal will be reversed, and judgment en-

tered here for appellants, and on cross-appeal the decree
is affirmed.

*Affirmed on cross-appeal; reversed and judgment here on
direct appeal.*