[No. 22674. Department Two. April 2, 1931.]

OLAF LARSON, *Respondent*, v. FARMERS WAREHOUSE
COMPANY, *Appellant*.[1]

*Tom Alderson*, for appellant.

*James G. Mulroy* and *Charles A. Cave*, for respondent.

BEALS, J.—Plaintiff resided near the town of Auburn upon a twenty-acre stump ranch, upon which he raised a little produce, and where he kept four cows and a few chickens. In addition to the income derived

[1]Reported in 297 Pac. 753.

from his ranch, plaintiff worked as a carpenter. Defendant is engaged in business as a dealer in hay, grain and feed, and during the month of March, 1929, plaintiff purchased from defendant thirty-one bales (two tons) of hay, which he intended to feed to his stock. Plaintiff had made prior purchases of feed from defendant, who knew the purpose for which plaintiff purchased the hay. The particular order in question was given by plaintiff's wife to a salesman in the employ of defendant, and called for "No. 1 first cutting alfalfa." Defendant filled the order, and the thirty-one bales of hay were piled in plaintiff's barn to be used as needed. The hay was apparently of excellent quality, neither too dry nor too damp, and was much relished by plaintiff's stock.

In June, 1929, plaintiff sued defendant, alleging that the hay had contained lead arsenate and had poisoned his cows, and that, as a result of eating the hay, three of the cows had died, to plaintiff's damage in the sum of $430, for which amount, together with fifty dollars expenses, plaintiff prayed for judgment. Defendant answered, denying the material allegations of plaintiff's complaint, and cross-complaining against plaintiff for $112, an alleged balance due for goods sold. Plaintiff admitted the purchase of the goods referred to in defendant's cross-complaint, and complained of none thereof, save the hay. The action was tried to the court, sitting without a jury, and resulted in a judgment in favor of the plaintiff for $382.33, from which judgment defendant appeals.

Respondent testified that he did not feed the hay to his stock for a week or two after he received the same, and that seven or eight days after he commenced to feed this hay to his cattle, two of his cows became sick, whereupon he called a neighboring veterinary to treat

them. The veterinary diagnosed the cows' ailment as lead poisoning, and gave them medicine, notwithstanding which the two cows died. The first visit of the veterinary occurred March 25th, the cows dying a few days thereafter. A few weeks later, a third cow, which had been eating the hay, sickened and died.

Respondent relies upon section 15 of the uniform sales act, Rem. 1927 Sup., § 5836-15, the pertinent portions of which read as follows:

"Subject to the provisions of this act and of any statute in that behalf, there is no implied warranty or condition as to the quality or fitness for any particular purpose of goods supplied under a contract to sell or a sale, except as follows:

"(1) Where the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be reasonably fit for such purpose.

"(2) Where the goods are bought by description from a seller who deals in goods of that description (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be of merchantable quality."

Appellant contends that under the facts of this case appellant is not liable in law under any implied warranty available to respondent under the facts here shown, as to the wholesomeness of the hay, and that, as the hay was not sold under an express warranty, respondent cannot recover. In 35 Cyc.; p. 365, it is stated:

"A warranty is a statement or representation made by the seller of goods, contemporaneously with and as a part of the contract of sale, although collateral to the express object of it, having reference to the character, quality, or title of the goods, and by which he promises or undertakes to insure that certain facts are or shall

be as he then represents them. . . . A warranty is implied when the law derives it by implication or inference from the nature of the transaction, or the rel-. ative situation or circumstances of the parties.''

The general principles underlying warranties are stated in 24 R. C. L., p. 153, § 425, as follows:

''A warranty is an express or implied statement of something which a party undertakes shall be a part of the contract, and, though part of the contract, collateral to the express object of it; and while it is a concomitant, it is also a collateral, self-existent contract, and no more a part of the sale than a covenant of warranty in a deed is part of the conveyance. . . . All contracts of sale with warranty must contain two independent stipulations: (1) an agreement for the transfer of title and possession from the seller to the buyer.; (2) a further agreement that the subject of the sale has certain qualities and conditions.''

It is true, as contended by appellant, that implied warranties are exceptions to the old common law maxim, *caveat emptor,* which maxim was, however, formerly of more general application than now. It is also true that, under the uniform sales act, the common law liability of the seller has been, at least in many of the states, somewhat enlarged. Williston on Sales (2nd ed.), vol. 1, § 248.

The most general application of the doctrine of implied warranty has been in cases of sales of food stuffs intended for immediate human consumption, in which cases it has been very generally held that a warranty of soundness or wholesomeness will be implied. *Craft v. Parker, Webb Co.,* 96 Mich. 245, 55 N. W. 812, 21 L. R. A. 139, and notes; see also 24 R. C. L. 195. As above stated, the application of this doctrine has of recent years been quite generally enlarged. Williston on Sales, vol. 1, § 242A. As to whether or not this doctrine extends to the sale of provender for animal

consumption, the cases are not in harmony. Williston on Sales, vol. 1, § 242. Courts have generally held that when one asks for by name and buys from a retail merchant a patented, copyrighted, or trademarked product, manufactured by another, sold in marked, original, unbroken packages, there is no implied warranty on the part of the seller that such packages do not contain any foreign, deleterious, or poisonous substances. *Andrews & Son v. Harper,* 137 Wash. 353, 242 Pac. 27.

Appellant admits that, under the contract between the parties, it would be liable to respondent under an implied warranty, if the hay which it sold was unfit as feed for respondent's stock by reason of the fact that it was not first cutting hay, or was not number one quality, or was not alfalfa, or if, in the growing, producing, storing, or distributing thereof, any of its intrinsic value or natural characteristics which made it desirable for stock feed had been lessened or lost, and that by reason thereof respondent had suffered damage. Appellant contends, however, that, even though it appears that there was in the hay some latent defect or foreign, deleterious, poisonous substance, the presence of which was not caused by the usual method of production, storage or distribution, the presence of which was as apparent to the buyer as to the seller, no implied warranty exists, and the doctrine of *caveat emptor* applies. This case, on the facts, unquestionably comes within the latter classification.

In support of this argument, appellant cites many authorities. In the case of *Hoe v. Sanborn,* 21 N. Y. 552, 78 Am. Dec. 163, it was held that there was no implied warranty in case of a sale of circular saws by the manufacturer thereof, the saws on use proving to be too soft, due to a latent defect in the material purchased by the manufacturer, the court finding that the

defect was not due to any error in manufacturing, but was caused by poor material furnished the saw maker.

In the case of *Ketchum v. Stetson & Post Mill Co.,* 33 Wash. 92, 73 Pac. 1127, this court held that the vendor of a boom of saw logs was not liable for damage suffered by his vendee because of a piece of iron embedded in one of the logs, which, when the log was sawed, damaged the vendee's machinery. It appeared that the vendor had no knowledge of the presence of the piece of iron in the log, and that the vendee inspected the logs before starting them through the mill. See, also, *Walden v. Wheeler,* 153 Ky. 181, 154 S. W. 1088, 44 L. R. A. (N. S.) 597, and notes; and *Wade & Sons v. Batesville Hog Co.,* 139 Miss. 434, 104 South. 145.

In this connection, appellant relies upon the case of *Andrews & Son v. Harper,* 137 Wash. 353, 242 Pac. 27, referred to above, in which it was sought to hold the retailer upon a warranty as to the quality of a branded "dairy feed." It was held that no express warranty was proven, and that no warranty was implied in law, as the feed sold was contained in the original containers, data concerning which was plainly stamped upon each package.

The case last cited is not controlling here, but falls within that class of cases which concern themselves with the rights of one who asks for by its name, and buys from a retailer, a patented or proprietary product in the original package in which the same was put up by the manufacturer or wholesaler. The rule governing such cases is not applicable to such a case as this, in which it appears that respondent ordered simply first cutting No. 1 alfalfa hay. *Wolstenholme v. Randall,* 295 Pa. St. 131, 144 Atl. 909.

The question now under consideration, to-wit, the sale of provender for animal consumption, is discussed

in 24 R. C. L., p. 198, § 469, in which authorities on both sides of the question are referred to. In the case of *Lukens v. Freiund,* 27 Kan. 664, 41 Am. Rep. 429, it was held that the seller of a sack of bran sold for stock feed was not liable for the death of a cow occasioned by the presence in the bran of two copper articles accidentally introduced therein while the same was in the vendor's possession, although without negligence on his part. The bran was open to inspection, and no express warranty was proven. The supreme court of Arkansas, in the case of *National Cotton Oil Co. v. Young,* 74 Ark. 144, 85 S. W. 92, held that no implied warranty, upon which the vendor could be held for damage occasioned by the presence in the product of wire nails and similar substances, accompanied the sale of cotton seed products. See, also, *Dulaney v. Jones & Rogers,* 100 Miss. 835, 57 South. 225.

In these cases the courts declined to extend the implied warranty which accompanies the sale of food stuffs intended for immediate human consumption, and call attention to the fact that such implied warranty was introduced into the law for the preservation of human life and health, such considerations being of supreme importance. It is, however, significant that, in the majority of the cases cited, an inspection of the goods purchased, before the same were fed to the stock, would have disclosed the presence therein of the injurious articles, while in the case at bar no amount of inspection short of a chemical analysis would have disclosed the presence of arsenate of lead in the hay.

The supreme court of Utah, in the more recent case of *Thatcher Milling & Elevator Co. v. Campbell,* 64 Utah 422, 231 Pac. 621, held that, in an action for the price of chicken feed, a counter-claim for damages to the poultry by reason of the feed being mouldy was

proven, and that an implied warranty in favor of the purchaser of the feed had been established. This case arose under the section of the uniform sales act which is here relied upon by respondent, and is therefore directly in point here.

In the case of *Gussner v. Miller & Shuper,* 44 N. D. 587, 176 N. W. 359, the supreme court of North Dakota held that, as to a quantity of hay purchased by the lessee of the farm upon which the hay was stacked, there was, under the circumstances disclosed by the evidence, an implied warranty that the hay was fit to be fed to the stock upon the farm, also purchased by the lessee. The written contract between the parties was silent as to the quality of the hay, which was contained in thirty-odd stacks, and which, as a practical proposition, the purchaser could not thoroughly examine. The court held that, in so far as the hay fell short of being merchantable hay, the purchaser was protected by an implied warranty. This case was also decided under the uniform sales act, which was adopted by the legislature of North Dakota in 1917.

The court of appeals of Maryland, in the case of *Robinson v. Barteldes Seed Co.,* 139 Md. 486, 115 Atl. 757, held that, where seed corn was purchased from a dealer at a distance, without opportunity to examine, the sale came within the provisions of the sales act of Maryland, in which state the uniform sales act was adopted in 1910, and that the seller impliedly warranted the seed as reasonably fit for the purpose for which it was sold.

The opinion of the supreme court of Minnesota, in the case of *Baumgartner v. Glesener,* 171 Minn. 289, 214 N. W. 27, is to the same effect.

This court, in the case of *Hartman v. Barnes Grain & Feed Co.,* 155 Wash. 394, 284 Pac. 754, affirmed a judgment of the superior court rendered upon the

verdict of a jury in favor of the plaintiff in an action for breach of warranty in connection with the sale of seed. It was held that the evidence warranted the submission to the jury of the question as to whether or not there was an express warranty as to the quality of the seed sold, as well as the question of whether or not there was an implied warranty. Though not directly in point, the opinion contains some statements pertinent to the question here presented.

Appellant relies upon the case of *Magnolia Milling Co. v. Clark*, 128 Wash. 677, 223 Pac. 1042, in which this court reversed a judgment rendered in favor of the defendant upon the verdict of a jury in an action instituted by the plaintiff to recover for the value of chicken feed sold to the defendants. The defendants counter-claimed for damages claimed to have been suffered by reason of the fact that the chicken feed sold had injured their poultry, by reason of certain alleged defects in the feed, and that the same had been sold under an implied guaranty. This court held that the defendants had failed to prove their damages, and that the verdict of the jury was apparently based upon speculation only, and therefore could not stand. This case was decided upon the facts, and is not of assistance in determining the question of law now under discussion.

A superior court of Pennsylvania consisting of six judges, on an appeal from the municipal court of Philadelphia county in the case of *Shute v. Levin*, 66 Pa. Sup. Ct. 67, in an action brought to recover a balance due on account of the price of hay, the defendant contending that the hay had been of poor quality, held that

"Where there is no express warranty one arises by implication where the buyer makes known to the seller the particular purpose for which the goods are re-

quired and it appears that the buyer relies upon the seller's skill or judgment.''

In the case cited, a number of defendant's horses had died as the result of eating the hay, portions of which had for some reason become unwholesome. As in the case at bar, the hay was packed in bales, and the court held that the property was not in a condition to be inspected by the retail purchaser.

Under the uniform sales act, the distinction sometimes formerly recognized between a retail dealer and a grower or manufacturer has been generally disregarded. *Luria Bros. & Co. v. Klaff,* 139 Md. 586, 115 Atl. 849, and cases there cited.

In the case of *Ward v. Valker,* 44 N. D. 598, 176 N. W. 129, it was held, in an action to recover a balance due on account of bulbs purchased from an importer, in which the defendant counter-claimed for damages based on the alleged inferior quality of some of the bulbs furnished, that the seller, though not the manufacturer or grower, knowing the purpose for which the goods were intended to be used, impliedly warranted that the goods were of merchantable quality and fit for the intended use.

The supreme court of Rhode Island, in the case of *Keenan v. Cherry & Webb,* 47 R. I. 125, 131 Atl. 309, held that the absence of express warranties did not preclude the existence of implied warranties, and that under the uniform sales act a merchant selling articles generally used in but one way, impliedly warranted the fitness of the articles for use in that particular way, and that knowledge on the part of the merchant as to the purpose for which the buyer intended to use the article purchased, might be shown from the sale alone.

Realizing the importance of the question of law here discussed, we have given the matter careful consideration, and made an independent investigation of the

authorities on the question of implied warranty applicable to the state of facts here presented. The following cases are also in point upon this question: *Kelly v. Lum*, 75 Wash. 135, 134 Pac. 819, 49 L. R. A. (N. S.) 1151; *Hausken v. Hodson-Feenaughty Co.*, 109 Wash. 606, 187 Pac. 319; *French v. Vining*, 102 Mass. 132; *Houk v. Berg*, 105 S. W. (Tex. Civ. App.) 1176; *Swift & Co. v. Redhead*, 147 Iowa 94, 122 N. W. 140; *Poovey v. International etc. Co.*, 191 N. C. 722, 133 S. E. 12.

The question is not free from difficulty, and the cases are in hopeless conflict, but we conclude that the better rule is that, under the uniform sales act, and the weight of authority, giving particular consideration to cases decided under that act, appellant is liable as for an implied warranty that the hay sold to respondent was not only of the kind and quality ordered, but was, as a lot, generally free from deleterious substances, poisonous to stock.

This case presents a difficult question of fact, as well as of law, and counsel for appellant earnestly contends that respondent failed to prove that the loss of his cows was due to the presence of arsenate of lead in the hay.

It appears that the veterinary, at the time of his first call, examined the field in which respondent's cows had run, and found therein an old bucket containing fragments of lead paint, some of the fragments being scattered over the ground in the vicinity of the bucket. An examination of the contents of the stomachs of the two cows which first died disclosed that the cows had eaten particles of this lead paint, which were present in their stomachs, although in an insoluble, and therefore harmless, state. The veterinary had administered medicine to the cows for the purpose of rendering any lead which they had taken into their

systems insoluble, and the condition of the lead found might have been due to the action of this medicine.

Respondent had a chemical test made of the hay, and his witnesses testified that an analysis thereof disclosed the presence of arsenate of lead. At the time of his first visit, the veterinary removed from the field the old bucket containing the paint. The third of respondent's cows to die took sick sometime after this, which seems to indicate that the loose paint in the field was not responsible for the death of that cow, at least. Respondent's testimony was to the effect that his cows had died as the result of eating arsenate of lead.

On the other hand, appellant's witnesses testified that a chemical analysis of the hay, made by a chemist retained by appellant, failed to show the presence therein of any harmful substance, and appellant traced the hay from where it was said to have been grown to its warehouse, its witnesses giving the hay a remarkably clean bill of health at all stages of its growth, cutting, baling and travels.

We have read the testimony as contained in the statement of facts, not contenting ourselves with an examination of the abstract alone, and are of the opinion that, notwithstanding certain phases of respondent's case which are not altogether satisfactory, the testimony preponderates in favor of the findings of fact as entered by the trial court, which had the advantage of seeing and hearing the witnesses for the respective parties.

Judgment affirmed.

TOLMAN, C. J., FULLERTON, MILLARD, and BEELER, JJ., concur.